STATE of Wisconsin, Plaintiff-Respondent,

v.

Jean L. CRANDALL, Defendant-Appellant.

Supreme Court

*No. 85-0557-CR. Argued October 1, 1986.—Decided October 29, 1986.*

(Also reported in 394 N.W.2d 905.)

For the defendant-appellant there was a brief by *Jeff Scott Olson* and *Julian & Olson, S.C.,* Madison, and oral argument by *Jeff Scott Olson.*

For the plaintiff-respondent the cause was argued by *Mary Batt,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

STEINMETZ, J. The issue in this case is whether the due process clause of the Wisconsin Constitution, article I, section 8(1)[1] requires that a defendant accused

---

[1] Article I, section 8(1) of the Wisconsin Constitution provides as follows:

> **"Prosecutions; double jeopardy; self-incrimination; bail; habeas corpus.** SECTION 8. (1) No person may be held to answer for a criminal offense without due process of law, and no person for the same offense may be put twice in jeopardy of punishment, nor may be compelled in any criminal case to be a witness against himself or herself."

of operating a motor vehicle while intoxicated be warned that a refusal to submit to a chemical breath test can be used against her as evidence at trial.

The facts of the case are that in the early evening hours of August 19, 1983, Jean L. Crandall was stopped by police. She was driving ten miles per hour under the speed limit and weaving across the center line to the shoulder of the road. The arresting officer smelled alcohol on the defendant's breath and noticed her bloodshot eyes and unsteady gait. After failing several field sobriety tests and a preliminary breath test, the defendant was arrested for operating a vehicle while under the influence of alcohol (OWI). The defendant was read the "Informing the Accused" form and refused to submit to a chemical test of her breath. This form is found at sec. 343.305(3)(a), Stats., and states:

> "A law enforcement officer requesting a person to take a test under sub. (2) shall, at the time of the request and prior to the administration of any such test, inform the person:
> "1. That he or she is deemed to have consented to tests under sub. (1);
> "2. That if he or she refuses to submit to any such test his or her operating privilege shall be revoked under sub. (9); and
> "3. That in addition to the tests designated by the law enforcement agency under sub. (1), he or she may have an additional test under sub. (5)."

The defendant was taken to the breathalyzer room and again asked if she would take the test. She refused. The defendant stated she thought the test was unfair because a heavy individual could drink more than she and still remain under .10, while she could drink less and fail the test.

This case is before this court on certification which was accepted on February 18, 1986. On appeal, the defendant argues that, since she was not advised that her refusal to submit to a breath test could be admitted into evidence at trial, due process forbids its use.

The same argument was made in *South Dakota v. Neville*, 459 U.S. 553 (1983), which considered due process under the United States Constitution. Neville was stopped by police for ignoring a stop sign. After failing several field sobriety tests, Neville was arrested for OWI. He was given *Miranda*[2] warnings, informed of the South Dakota implied consent law and asked to take a blood test. He refused stating: "I'm too drunk, I won't pass the test." *Id.* at 555.

The South Dakota Supreme Court suppressed all evidence of the refusal on the ground that the statute allowing introduction of evidence of the refusal violated the privilege against self-incrimination. *State v. Neville*, 312 N.W. 2d 723, 726 (S.D. 1981).

In the United States Supreme Court, Neville argued that due process forbids using his refusal against him at trial because he had not been warned of this consequence. Neville cited *Doyle v. Ohio*, 426 U.S. 610 (1976). *Doyle* held that the due process clause prohibits a prosecutor from using a defendant's silence after *Miranda* warnings to impeach his testimony at trial. *Id.* at 619. The *Doyle* court relied on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. *Id.* at 618.

In *Neville*, the Supreme Court rejected applying the rule in *Doyle*, first, since the rights in each case differed.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda*'s right to silence is one of constitutional stature. The right to refuse a blood alcohol test is simply a matter of statutory privilege. Second, in *Doyle,* the Court recognized that, since the *Miranda* warnings emphasized the dangers of choosing to speak but gave no warnings of adverse consequences from choosing to remain silent, the *Miranda* warnings implicitly assured a defendant that his silence would not be used against him. *Doyle,* 426 U.S. at 618.

By contrast, the warnings in *Neville* contained "no such misleading implicit assurances as to the relative consequences of his choice." *Neville,* 459 U.S. at 565. Even though Neville was not specifically warned that the test results or his refusal could be used against him at trial, he was specifically warned that his refusal to take the test could lead to a loss of his driver's license. The Court concluded that the warnings that he could lose his license "made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Id.* at 566. Nor was this failure to warn the defendant an implicit promise to forego use of evidence that would unfairly trick the defendant if the evidence were later offered against him at trial. The use of his refusal after the warnings he received comported with due process. *Id.* at 566.

██

In Wisconsin there is no constitutional or statutory right to refuse a breathalyzer test. In this case, there were no implicit assurances that driver's license revocation would be the only consequence of a refusal. The warning that the defendant could lose her driving privileges if she refused to take the breath test made it clear that refusing the test was not a " 'safe harbor,' free of adverse consequences." *Id.* at 566. The defendant had

not been deceived or bullied into a false sense of security by the warning read to her from the "Informing the Accused" form. There were no implicit promises that the state would forego use of the refusal evidence at trial. The United States Supreme Court found that no federal due process violation occurred on the *Neville* facts. We find persuasive that conclusion applied to the facts of this case. We adopt the same rationale to find there was no due process violation of the Wisconsin Constitution.

After the United States Supreme Court rejected Neville's constitutional claims, his case was remanded to the South Dakota Supreme Court for further proceedings. In *State v. Neville*, 346 N.W. 2d 425, 430-31 (S.D. 1984), the South Dakota Supreme Court held that the defendant's refusal to submit to a blood alcohol test could not be admitted in evidence without denying his due process rights under that state's constitution. Crandall relies on that decision and asks that we apply the Wisconsin constitutional due process requirement in the same manner.

In South Dakota the implied consent statute, according to the South Dakota Supreme Court, implicitly includes the right to refuse to submit to a test. *State v. Buckingham*, 90 S.D. 198, 209, 240 N.W. 2d 84, 87 (1976).

The South Dakota statute SDCL sec. 32-23-10.1 Motor Vehicles (1984 ed.), according to that state's supreme court, "grants an absolute right to an arrested person to refuse to submit to testing to determine the alcoholic content of his or her blood . . . ." *State v. Oswald*, 90 S.D. 342, 348, 241 N.W. 2d 566, 570 (1976); *State v. Neville*, 312 N.W. 2d at 726. Under these circumstances, it is not fair to grant a person an absolute

right to refuse to submit to a chemical test and then, when he exercises that right, to use that evidence against him at trial. *State v. Oswald*, 90 S.D. at 348, 241 N.W. 2d at 569, quoting *People v. Stratton*, 286 App. Div. 323, 143 N.Y.S. 2d 362 (1955).

The Wisconsin implied consent statute, sec. 343.305, Stats., however, "[C]learly does not recognize a right to refuse the test." *State v. Albright*, 98 Wis. 2d 663, 671, 298 N.W. 2d 196 (Ct. App. 1980). In *State v. Neitzel*, 95 Wis. 2d 191, 201, 289 N.W. 2d 828 (1980), we explained:

> "[T]he accused intoxicated driver has no choice in respect to granting his consent. He has, by his application for a license, waived whatever right he may otherwise have had to refuse to submit to chemical testing. It is assumed that, at the time a driver made application for his license, he was fully cognizant of his rights and was deemed to know that, in the event he was later arrested for drunken driving, he had consented, by his operator's application, to chemical testing under the circumstances envisaged by the statute." *Accord: Milwaukee County v. Proegler*, 95 Wis. 2d 614, 624, 291 N.W. 2d 608 (Ct. App. 1980).

In Wisconsin, refusing the test not only violates the consent impliedly given under the statute, it reflects consciousness of guilt by the accused. As was stated in *State v. Albright*, 98 Wis. 2d at 668-69:

> "A reasonable inference from refusal to take a mandatory breathalyzer test is consciousness of guilt. The person is confronted with a choice of the penalty for refusing a test, or taking a test which constitutes evidence of his sobriety or intoxication. Perhaps the most plausible reason for refusing the

257

test is consciousness of guilt, especially in view of the option to take an alternative test." *Accord: State v. Bolstad*, 124 Wis. 2d 576, 585, 370 N.W. 2d 257 (1985).

■

"The purpose behind the implied consent law is to facilitate the gathering of evidence against drunk drivers." *State v. Neitzel*, 95 Wis. 2d 191, 203. It is designed to secure convictions and get drunk drivers off the highways. *State v. Brooks*, 113 Wis. 2d 347, 356, 335 N.W. 2d 354 (1983). The statute is to be liberally construed to effectuate this purpose. *Scales v. State*, 64 Wis. 2d 485, 494, 219 N.W. 2d 286 (1974).

We have previously upheld due process of the implied consent statute in other respects. In *State v. Nordness*, 128 Wis. 2d 15, 33, 381 N.W. 2d 300 (1986), we held there was no due process right to present evidence at the revocation hearing that the defendant was not the actual operator of the motor vehicle. In *State v. Walstad*, 119 Wis. 2d 483, 522, 351 N.W. 2d 469 (1983), we held that failure to produce the breathalyzer ampoule is irrelevant to due process. *Milwaukee County v. Proegler*, 95 Wis. 2d 614, 291 N.W. 2d 608 (Ct. App. 1980), held that failure to inform an individual at the time of arrest that his driver's license can be revoked upon a plea of guilty to drunk driving does not violate due process.

The defendant did explain why she refused to submit to a breath test pursuant to *State v. Bolstad*, 124 Wis. 2d at 585–86. She refused the test because she did not think it was a fair test. She had evidently formed her opinion from her own experience since this was the third such test she was requested to take in five years.

The person who cooperates by taking the breathalyzer test will have the result presented at trial. In fairness to those defendants, we do not believe the defendant who refuses to take the test should have no mention of that made at trial. Fairness would indicate the defendant failing to submit to the test should not be put in a superior position.

The defendant was read the "Informing the Accused" form which advised that her driving privileges could be revoked if she failed to take the test. That is all that is required. This form adequately informed her of her rights and responsibilities under the Wisconsin implied consent law. *State v. Disch*, 119 Wis. 2d 461, 469, 351 N.W. 2d 492 (1984) stated:

> "It is undisputable that due process is not a mechanistic requirement of American jurisprudence. It is a test of fundamental fairness and is not dependent upon the state's conformity with irrelevancies. A defendant is entitled to a fair trial but not a perfect one. An omission or failure of the state that does not compromise fundamental fairness or does not result in prejudice to a defendant does not result in a reversal of a guilty verdict." *Accord, State v. Tuckwab*, 98 Wis. 2d 182, 187, 295 N.W. 2d 795 (Ct. App. 1980).

Because the defendant had no right to refuse the breath test, the arresting officer was not obliged to tell her that her refusal could be used against her at trial. The introduction of this refusal at trial was not fundamentally unfair. The defendant's trial may not have been perfect, but it certainly was fair. That is all that due process requires. *State v. Disch*, 119 Wis. 2d at 469. The legislature has decided what must be told persons when requesting them to take a breathalyzer test

through sec. 343.305, Stats. No more than that in these circumstances is required for due process.

We do not find that the necessity of due process and fairness under the Wisconsin Constitution requires more safeguards of warnings than the United States Supreme Court required to satisfy federal due process in *South Dakota v. Neville.*

*By the Court.*—The judgment of the circuit court for Dane county is affirmed.