STATE of Wisconsin, Plaintiff-Respondent,

v.

John L. RILEY, Defendant-Appellant.†

Court of Appeals

*No. 91–1883. Submitted on briefs May 8, 1992.—Decided November 19, 1992.*

(Also reported in 493 N.W.2d 401.)

For the defendant-appellant the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Habermehl* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Michael G. Schaefer*, assistant district attorney, of Jefferson.

Before Eich, C.J., Dykman and Sundby, JJ.

† Petition to review pending.

DYKMAN, J.   John L. Riley appeals from an order revoking his operating privilege for one year pursuant to sec. 343.305(10), Stats., for refusing to submit to a chemical test. The issue on appeal is whether the "Informing the Accused" form read to Riley, after his arrest for operating a motor vehicle under the influence of an intoxicant (OMVWI), is so misleading as to the consequences of submitting to a chemical test that he was deprived of due process of law.

We conclude that the form neither misled Riley as to his rights and responsibilities under the implied consent law, sec. 343.305, Stats., nor deprived him of due process of law. Therefore, we affirm.

## I.

The parties stipulated to the facts. On May 17, 1990, State Trooper Block observed Riley crossing the centerline by one-and-one-half to two feet while driving southbound on Highway 26 in Fort Atkinson. He tracked Riley for approximately a half-mile at a speed ten miles per hour over the posted limit, and Riley crossed the centerline a second time. Riley continued for four-tenths of a mile while Block pursued with dome lights and siren activated.

Upon stopping Riley, Block detected a strong odor of intoxicants on his breath and noticed that his eyes were watery and bloodshot. After Riley failed several field sobriety tests, Block arrested him for OMVWI and transported him to the Fort Atkinson Police Department where Block read him the "Informing the Accused" form.[1]   Riley refused to submit to a

---

[1] The form states in relevant part:

A law enforcement officer requesting a person to take one or more chemical tests under s. 343.305(2) Wis. Stats. . . . shall, at the

breathalyzer and Block then prepared a notice of intent to revoke operating privilege.

At the revocation hearing, Riley did not contest the issue of probable cause for his arrest. Instead, he challenged the information provided to him from the "Informing the Accused" form as misleading and a violation of his due process rights. The trial court rejected this contention and ordered the revocation of his operating privilege.

## II.

Riley's argument focuses on the statement in paragraph four of the form that if any test indicates a blood alcohol concentration (BAC) of 0.1 percent or more, the accused's operating privilege will be administratively

---

time of the request and prior to administering any such test, inform the person:

1. You are deemed under Wisconsin's Implied Consent Law, s. 343.305, to have consented to tests of your breath, blood or urine for the purpose of determining the presence or quantity of alcohol or other drugs in your blood or breath.

2. If you refuse to submit to any such tests, your operating privilege will be revoked as provided under s. 343.305(9) Wis. Stats.

3. In addition to the test or tests to which you have submitted at the request of a law enforcement officer, you may request the alternate test the department is prepared to administer, or at your own expense, reasonable opportunity to have any qualified person of your own choosing administer a chemical test for the purpose specified under s. 343.305(2) Wis. Stats.

4. If you take one or more chemical test(s) and the results of any test indicate a blood alcohol concentration of 0.10% or more, in addition to other penalties which may be imposed, your operating privilege will be administratively suspended as provided under s. 343.305(7) Wis. Stats. The statutorily prescribed penalties resulting from a conviction for driving with a BAC of 0.10% or more include a fine or forfeiture, suspension or revocation of driving privileges, points added to your driving record, and a possible jail sentence in the event you are a repeat offender. See s. 343.30 and 346.65 Wis. Stats.

suspended under sec. 343.305(7), Stats.[2] Riley contends that this statement inaccurately reflects the administrative suspension process which is detailed in sec. 343.305(8), Stats., and leads the accused to mistakenly believe that requesting an alternative test is pointless when the first test reveals a BAC of 0.1 percent or more. He cites *Raley v. Ohio*, 360 U.S. 423 (1959), and *McDonnell v. Commissioner of Pub. Safety*, 473 N.W.2d 848 (Minn. 1991), to support his claim that such a misleading statement violated his due process rights and that the appropriate remedy is to reverse the revocation order.

We agree with Riley that there are seeming inconsistencies between subsecs. (7) and (8) of sec. 343.305, Stats., regarding administrative suspension. Subsection (7) provides that when a person fails any chemical test administered, the law enforcement officer shall forward the person's license to the Department of Transportation and the operating privilege *is* suspended for six months. Subsection (8), on the other hand, directs the law enforcement officer to give the person notice that the operating privilege *will be* suspended and that he or she has the right to request administrative and judicial review. Furthermore, subsec. (8) states that the notice serves as a thirty-day temporary license and that the administrative suspension *will become effective when the temporary license expires.*

We also agree that the form gives an incomplete picture of the suspension process. Under sec. 343.305(8)(b)1., Stats., the accused may request an

---

[2] The phrase "blood alcohol concentration of 0.1 percent" was changed to "alcohol concentration of 0.1," and sec. 343.305 (7), Stats., was renumbered to sec. 343.305(7)(a), Stats., by 1989 Wis. Act 105. These changes do not substantively affect the issue raised in this appeal.

administrative hearing within ten days of receiving the above notice (thirteen days, excluding Saturdays, Sundays and holidays, if the notification is by mail). If the hearing examiner finds either that the criteria for administrative suspension have not been satisfied or that the accused did not have a BAC of 0.1 percent or more at the time of the alleged offense, the administrative suspension of the operating privilege is rescinded. Section 343.305(8)(b)5., Stats.[3] Among the administrative criteria is whether the result of each test given indicated that the accused had a BAC of 0.1 percent or more. Section 343.305(8)(b)2.d., Stats.; Wis. Adm. Code sec. Trans 113.04(3)(e).

Thus, the form does not alert the accused to the fact that an administrative suspension will not take effect if any test administered indicates a BAC less than 0.1 percent and the accused follows the appropriate procedures for administrative review. If a person were to submit to a chemical test, fail it, and then receive no additional information about administrative suspension to supplement paragraph four of the form, that person could convincingly argue that the state actively misled him or her about the merits of an alternative test, and that the resulting suspension would have to be reversed on due process grounds.[4] However, that is not the case before

---

[3] There are also apparent inconsistencies within sec. 343.305 (8), Stats. Section 343.305(8)(a), Stats., states that an administrative suspension becomes effective thirty days after the accused is notified of the suspension, while sec. 343.305(8)(b)5., Stats., states that the administrative suspension, which has not yet taken effect under par. (a), will be rescinded by the hearing examiner.

[4] According to the state's brief, when an accused submits to a chemical test and fails, he or she is given two forms which provide notice of the administrative suspension and information regard-

us. Riley refused to take the first test and, therefore, he neither had the right to request the alternative test nor did he require additional information about suspension to make an informed choice.

## III.

The question to be addressed then is whether the form provided sufficient information about the consequences of submitting to the breathalyzer, or refusing to do so, for Riley to make an informed choice between the two options. The form indicated that if Riley refused to submit to any test, his operating privilege would be revoked. On the other hand, if he submitted to the breathalyzer test as requested, the form stated that he could request an alternative test and that his operating privilege would be administratively suspended in the event that any one of the tests indicated a BAC of 0.1 percent or more.

The revocation warning "made it clear that refusing the test was not a ' "safe harbor," free of adverse consequences.' " *State v. Crandall*, 133 Wis. 2d 251, 255, 394 N.W.2d 905, 907 (1986) (quoting *South Dakota v. Neville*, 459 U.S. 553, 566 (1983)). Furthermore, the form appropriately ranked the options in terms of severity of associated penalties. The penalty for refusal was revocation, while the penalty, if any, associated with submission to the test depended on the test results. If the test indicated an excessive BAC, Riley's license would be suspended; otherwise, there would be no administrative suspension.

---

ing the administrative hearing, including the issues to be determined. These forms are not included in the record before us because Riley never submitted to a chemical test which yielded an excessive BAC result.

The form made it clear that regardless of the test's outcome, Riley would receive a stiffer penalty by refusing the test than by submitting to it. This is precisely the message the state wishes to communicate to persons accused of OMVWI, and it is consistent with the purpose of the implied consent statute — "to secure convictions and get drunk drivers off the highways." *Id.* at 258, 394 N.W.2d at 907-08.

We conclude that the state neither misled Riley concerning the decision to submit to a chemical test nor violated his due process rights. Therefore, the revocation of his operating privilege must stand.

*By the Court.*—Order affirmed.