STATE of Wisconsin, Plaintiff-Respondent,

v.

Jon M. SCHIRMANG, Defendant-Appellant.†

Court of Appeals

*Nos. 96–2008, 96–2630–CR. Submitted on briefs March 7, 1997.—Decided April 17, 1997.*

(Also reported in 565 N.W.2d 225.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Michael P. Finley,* assistant district attorney.

Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Jon M. Schirmang appeals an order revoking his driver's license and his subsequent conviction for operating a motor vehicle while under the influence of an intoxicant (OMVWI). Schirmang contends that the information he was given

prior to refusing to take a chemical intoxication test was inadequate under § 343.305(4), STATS. He contends the officer misstated the time period during which his prior OMVWI convictions could be counted against him; that the statement given misled him; and that he was prevented from making an informed choice about whether to submit to the requested test. He also contends that evidence of his refusal was improperly admitted at his OMVWI trial, and that he was prejudiced by the evidentiary error. For the reasons discussed below, we agree there was not substantial compliance with § 343.305(4), and therefore, Schirmang's license was improperly revoked based on his refusal. We also agree that evidence of his refusal was erroneously admitted at trial. However, we conclude the admission of the evidence was harmless error. Therefore, we vacate the trial court's order revoking Schirmang's license, but affirm the judgment of conviction for OMVWI.

## BACKGROUND

On September 8, 1995, Schirmang was arrested for OMVWI contrary to § 346.63(1)(a), STATS. The arresting officer drove Schirmang to the Sun Prairie police station and read him an Informing the Accused form prior to requesting that he submit to a breathalyzer test. The relevant portion of the form stated:

> If you have a prohibited alcohol concentration or you refuse to submit to chemical testing and you have two or more prior suspensions, revocations or convictions *within a five year period* which would be counted under s. 343.307(1) Wis. Stats., a motor vehicle owned by you may be equipped with an ignition interlock device, immobilized or seized and forfeited. (Emphasis added.)

However, effective April 30, 1994, potential OMVWI penalties include equipping the operator's car with an ignition interlock device, immobilizing or seizing it, if the driver has had two or more prior OMVWI convictions *within the last ten years*. *See* 1993 Wis. Acts 315 and 317.

At his refusal hearing, it was stipulated that Schirmang had two prior OMVWI convictions, one within the past five years and the other one in the past ten years. Based on undisputed evidence, the trial court found Schirmang had not received the proper warnings under the Implied Consent Law. However, it concluded the deficiency was a "technical violation," because Schirmang did not offer evidence to show that he would have taken the test if he had been correctly informed. Thereafter, the trial court decided Schirmang had unreasonably refused to submit to testing and ordered a three-year license revocation.

Following the refusal hearing, a trial was held on the OMVWI charge. The State introduced Schirmang's refusal, over his objection. The prosecution also incorporated Schirmang's refusal into its closing argument. In addition, the trial court instructed the jury that it could consider Schirmang's refusal. The jury returned a guilty verdict, and the trial court sentenced Schirmang to 120 days in jail, with Huber privileges; revoked his operating privileges for thirty-four months; imposed a $1,000 fine; ordered alcohol assessment; and ordered his vehicle to be seized.

## DISCUSSION

### Standard of Review.

■

The interpretation of Wisconsin's Implied Consent Law and its application to undisputed facts present questions of law which this court reviews independently. *State v. Sutton*, 177 Wis. 2d 709, 713, 503 N.W.2d 326, 328 (Ct. App. 1993).

### Implied Consent Law.

■

By applying for a driver's license, every driver impliedly consents to take a chemical test to determine alcohol content when certain statutory conditions are met. *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 277, 542 N.W.2d 196, 199 (Ct. App. 1995); § 343.305(2), STATS. Upon arrest for OMVWI, the officer may ask the driver to provide a blood, urine or breath sample. Section 343.305(3)(a). The officer must orally inform the driver of his or her rights under Wisconsin's Implied Consent Law when requesting the chemical test. Section 343.305(4). If the driver then refuses to provide the requested sample, the officer shall take the person's driving license and issue a notice of intent to revoke the person's driving privileges. Section 343.305(9)(a).

The driver may request a refusal hearing to determine the validity of the revocation. Section 343.305(9)(a)4, STATS. At a refusal hearing, the issues are limited to: (1) whether the requesting officer had probable cause to believe that the person was driving while under the influence of an intoxicant; (2) whether the officer complied with the informational provisions of § 343.305(4); (3) whether the person refused to per-

mit a blood, breath or urine test; and (4) whether the refusal to submit to the test was due to a physical inability unrelated to the person's use of alcohol. *State v. Wille*, 185 Wis. 2d 673, 679, 518 N.W.2d 325, 327 (Ct. App. 1994); § 343.305(9)(a)5. Schirmang raises the second issue on appeal.

**Adequacy of Refusal Warning.**

A refusal to submit to a chemical test for intoxication cannot result in revocation of operating privileges unless the person has first been adequately informed of his rights under the law. *See Village of Oregon v. Bryant*, 188 Wis. 2d 680, 693, 524 N.W.2d 635, 640 (1994). Substantial compliance with § 343.305(4), STATS., requires "actual compliance in respect to the substance essential to every reasonable objective of the statute." *State v. Wilke*, 152 Wis. 2d 243, 250, 448 N.W.2d 13, 15 (Ct. App. 1989). This means that a driver must be informed of all the statutorily designated information which that driver needs to know in order to make an informed decision. *See Quelle*, 198 Wis. 2d at 279, 542 N.W.2d at 199. In order to successfully challenge the sufficiency of the warning given by a law enforcement officer under § 343.305(4), an accused driver must satisfy a three-pronged test: (1) the requesting officer either failed to meet or exceeded his duty to inform the accused under § 343.305(4); (2) the lack or oversupply of information was misleading; and (3) the driver's ability to make the choice about whether to submit to chemical testing was affected. *Id.* at 280, 542 N.W.2d at 200.

Schirmang has met all three prongs of the *Quelle* test. The State concedes that the arresting officer understated the penalties which were applicable to

Schirmang, when he informed him that certain forfeiture penalties were only applicable to drivers who had two prior convictions within the preceding five years. This information was clearly misleading, because it suggested that any offenses which had occurred more than five years ago would not count against Schirmang, when in fact offenses ten years old would be counted. Finally, the misinformation affected Schirmang's ability to make a rational choice because he actually had two OMVWI convictions within the preceding ten years, but only one within the past five years, so he could not weigh his factual circumstances against the actual statutory criteria which affected him.

The trial court reasoned that Schirmang was not prejudiced by the misinformation because he presented no testimony that he would have submitted to testing had he been properly informed. However, there cannot be the substantial compliance with § 343.305(4), STATS., which our decisions require, when, as here, the penalties which would actually affect the driver, given his driving record, were misstated. *See Wilke*, 152 Wis. 2d at 251, 448 N.W.2d at 16 *and* § 343.305(9)(d). The order revoking Schirmang's license for refusing to submit to testing must be vacated.

**Evidence of Refusal at OMVWI Trial.**

The results of a properly administered breathalyzer test are admissible in court. *See State v. Disch*, 119 Wis. 2d 461, 480, 351 N.W.2d 492, 502 (1984). Fairness dictates that a defendant who refuses to take a chemical test should be placed in a position no better than that of a defendant who cooperates with

police. *State v. Crandall*, 133 Wis. 2d 251, 259, 394 N.W.2d 905, 908 (1986). Therefore, evidence of a refusal to submit to mandatory testing has also been held admissible in Wisconsin, as relevant to the defendant's consciousness of guilt. *Id.* at 259, 394 N.W.2d 908.

■

However, the constitutionality of admitting refusal evidence depends upon whether the defendant's refusal was an adequately informed one. *See South Dakota v. Neville*, 459 U.S. 553, 566 (1983). The warnings given to the defendant must make it clear that a refusal to submit to testing is not "a safe harbor, free of adverse consequences." *Id.* Wisconsin has held that informing a defendant that he may lose his driving privileges by refusing a test is sufficient to satisfy both the U.S. and Wisconsin due process clauses. *Crandall* at 256, 394 N.W.2d at 907. But, the holding in *Crandall* was based on the assumption that there is no statutory right to refuse a blood test. *Id.* at 255, 394 N.W.2d at 906. That assumption does not hold when, as discussed above, inadequate warnings have been given such that there has not been substantial compliance with § 343.305(4), STATS. It is a violation of a defendant's due process rights to admit refusal evidence at trial when there has not been substantial compliance with § 343.305(4). *State v. Zielke*, 137 Wis. 2d 39, 50–51, 403 N.W.2d 427, 432 (1987). Therefore, we conclude that the admission of the tainted refusal evidence at Schirmang's trial was error.

**Harmless Error.**

■

Our analysis does not end there, however. Evidentiary errors are subject to a harmless error analysis.

Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). A "reasonable possibility" is one which is sufficient to undermine confidence in the outcome of the proceeding. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). The burden of proof is on the beneficiary of the error to establish that the error was not prejudicial. *Dyess* at 547 n.11, 370 N.W.2d at 232 n.11.

At trial, Officer Alsaker and Officer Baltzer were the only witnesses. Both officers were at the scene of the stop and both were with Schirmang at the Sun Prairie police station after his arrest. They observed him for approximately one hour and twenty minutes. Officer Alsaker reported that prior to stopping Schirmang, he noticed that his vehicle would "drift" from one side of his lane of travel to the other; that he accelerated in a very rapid manner from a stop sign and that after he activated the red and blue emergency lights, Schirmang continued 150–200 feet before he stopped. Alsaker also testified that on contact with Schirmang he noticed the odor of alcohol, that Schirmang had slurred speech and that he admitted having three beers before being stopped at 2:00 a.m., which was "bar time" in Sun Prairie. When asked to exit the vehicle to perform field sobriety tests, Schirmang was very slow to respond.

Schirmang failed the nystagmus and finger touch field sobriety tests and he refused to perform the heel-toe walk and turn test and the one-leg stand test, complaining he had a neck injury and could not try them. However, Baltzer, who was present at the tests and had sixteen years experience as a police officer, and Alsaker both testified that Schirmang moved his neck

with ease, and had no difficulty walking across the street to do the tests. Baltzer also relayed that Schirmang had blood-shot eyes, swayed as he walked across the street, had slurred speech and spoke with a "thick tongue."

When Schirmang was placed under arrest for OMVWI and taken to the police station, his lack of cooperation increased. Both officers testified that he was verbally abusive to them, repeatedly calling Alsaker a "fucking asshole." Each officer testified that he or she had asked Schirmang to take a breath test and that he refused. At one point prior to giving his final refusal, he spit on the floor; and when asked to wipe it up, he said to Baltzer, "Fuck you. Wipe it up yourself." Each officer testified that Schirmang was under the influence of intoxicants to a degree sufficient to impair his driving.

The jury instruction related that evidence of Schirmang's refusal had been received and the jury could give it what weight it thought appropriate. The prosecutor mentioned the refusal in his initial remarks, but focused mainly on all of the other evidence which showed intoxication. Defense counsel did not address all of the other facts testified to by the officers which showed Schirmang was under the influence of an intoxicant; but instead, he focused on the refusal, trying to explain why it was acceptable for Schirmang to refuse. The jury was out for less than an hour before it returned a unanimous guilty verdict.

Because the evidence of Schirmang's violation of § 346.63(1)(a), STATS., was overwhelming, we conclude that there is not a reasonable possibility that the admission of Schirmang's refusal contributed to his conviction. The State has met its burden; the error of

admitting his refusal was harmless. Therefore, we affirm Schirmang's conviction.

## CONCLUSION

The trial court erred when it concluded that the information Schirmang received substantially complied with § 343.305(4), STATS., and revoked his license because of the refusal. The resulting revocation must be vacated. In addition, the admission of evidence of Schirmang's refusal at his OMVWI trial was error. However, because we conclude that the error was harmless, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed; order vacated.