f 52.
MICHAEL J. GABLEMAN, J.
{concurring). I agree that the blood draw here was a permissible warrantless search under the Fourth Amendment, and I concur in the mandate of the court. However, rather *501 than addressing this case as one of exigent circumstances, I would decide the question certified to us by the court of appeals: whether provisions in Wisconsin's implied consent law authorizing a warrantless blood draw from an unconscious driver based on the driver's implied consent are unconstitutional under the Fourth Amendment to the United States Constitution.
¶ 53. Wisconsin's implied consent law, Wis. Stat. § 343.305, provides notice to all drivers that when they operate a motor vehicle in this state, they are deemed to have consented to blood, breath, or urine testing for the presence of alcohol or controlled substances, § 343.305(2),[1] if and when such testing is required by a law enforcement officer under certain circumstances, including when the driver is arrested for one of certain enumerated intoxicated-driving offenses, § 343.305(3).[2] It further provides that a driver "who is unconscious or otherwise not capable of with *502 drawing consent is presumed not to have withdrawn consent" and a test may therefore be administered. See § 343.305(3)(ar)-(b).[3]
*503 ¶ 54. In this case, a warrantless blood draw was taken from the defendant, David W. Howes, while he was unconscious. Howes had been involved in a motorcycle accident with a deer, and he was found injured, unconscious, and smelling of alcohol. Howes was still unconscious when a sheriffs deputy later arrested him at the hospital on suspicion of drunk driving. Following the procedures set forth in the implied consent law, the deputy asked the hospital to take a blood sample from Howes,[4] and the test results revealed the presence of a prohibited alcohol concentration. Howes was charged with operating a motor vehicle while intoxicated, in violation of Wis. Stat. § 346.63(l)(a), and operating a motor vehicle with a prohibited alcohol concentration, in violation of § 346.63(l)(b).
¶ 55. The circuit court suppressed the test results, ruling that subsections (3)(ar) and (3)(b) of the implied consent law are facially unconstitutional under the Fourth Amendment to the extent they authorize warrantless testing of unconscious drivers in the absence of exigent circumstances.[5] The circuit court rejected the argument that Howes consented, concluding that "[t]here can be no consent in the constitutional sense where somebody is unconscious and incapable of *504 giving consent." The State appealed, and the court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61.
¶ 56. On appeal, Howes takes the position that the circuit court was correct to find the unconscious-driver provisions facially unconstitutional.[6] Howes argues that, absent an established exception to the Fourth Amendment's warrant requirement, officers must obtain a warrant before ordering a blood test of a driver who is unconscious or otherwise not capable of withdrawing consent. Howes further argues that the statutory provisions authorizing blood tests of such drivers based on their implied consent create an unreasonable per se exception to the warrant requirement.
¶ 57. I conclude that Howes has not met his burden of proving beyond a reasonable doubt that the unconscious-driver provisions of the implied consent law are unconstitutional. Voluntary consent to testing may be implied from the conduct of driving with notice of the conditions of Wisconsin's implied consent law, and such consent continues unless it is revoked. Therefore, I conclude that the circuit court erred in striking *505 down the statute as facially unconstitutional and in suppressing the results of the blood test.
¶ 58. I begin with the applicable standard of review and with a general overview of Wisconsin's implied consent law, focusing on the challenged unconscious-driver provisions. I then apply the principles of the Fourth Amendment to the unconscious-driver provisions in light of Howes' argument that they are facially unconstitutional.
I. STANDARD OF REVIEW
¶ 59. Whether a statute is constitutional is a question of law that this court reviews de novo. Dane Cty. DHS v. P.P., 2005 WI 32, ¶ 14, 279 Wis. 2d 169, 694 N.W.2d 344. Statutes are presumed to be constitutional. Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 613 N.W.2d 849. "The court indulges every presumption to sustain the law if at all possible, and if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality." Id. The burden is on the challenger to "prove that the statute is unconstitutional beyond a reasonable doubt." State v. Cole, 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328. Here, because Howes presents his argument as a facial challenge to the unconscious-driver provisions, the burden is on him to prove beyond a reasonable doubt that the statute "cannot be constitutionally enforced under any circumstances." See Society Ins. v. LIRC, 2010 WI 68, ¶ 26, 326 Wis. 2d 444, 786 N.W.2d 385 (citing State v. Wood, 2010 WI 17, ¶ 13, 323 Wis. 2d 321, 780 N.W.2d 63).
*506 II. OVERVIEW OF WISCONSIN'S IMPLIED CONSENT LAW
¶ 60. Wisconsin's implied consent law was first enacted in 1969 and is codified at Wis. Stat. § 343.305. "The purpose behind the implied consent law is to combat drunk driving by 'facilit[ating] the gathering of evidence against drunk drivers.' " State v. Piddington, 2001 WI 24, ¶ 17, 241 Wis. 2d 754, 623 N.W.2d 528 (quoting State v. Neitzel, 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980)). Like every one of our forty-nine sister states, Wisconsin has chosen to combat the problem of drunken and impaired driving by enacting an implied consent law, such that consenting to testing has long been "a condition of the privilege of operating a motor vehicle upon state highways." State v. Zielke, 137 Wis. 2d 39, 48, 403 N.W.2d 427 (1987).
¶ 61. The implied consent law provides that a driver is deemed to have consented, in certain circumstances, to testing of his or her blood, breath, or urine for the presence of alcohol or other controlled substances. Wis. Stat. § 343.305(2). Specifically, it provides that anyone who "drives or operates a motor vehicle upon the public highways of this state" is "deemed" to have consented to testing when required by a law enforcement officer under the specific circumstances enumerated in the statute. Id.
¶ 62. Although the statute acknowledges that a person may withdraw consent and refuse to submit to testing, a driver has no statutory or constitutional right to refuse without consequences. See State v. Crandall, 133 Wis. 2d 251, 255-56, 394 N.W.2d 905 (1986). Nor does the statute provide that officers must ask drivers whether they want to refuse testing. "This statutory scheme does not contemplate a choice, but *507 rather establishes that a defendant will suffer the consequences of revocation should he refuse to submit to the test after having given his implied consent to do so." Milwaukee Cty. v. Proegler, 95 Wis. 2d 614, 624, 291 N.W.2d 608 (Ct. App. 1980).
¶ 63. The occasions on which drivers are deemed to have consented to testing are limited to particular circumstances where the legislature has decided that such testing is necessary to combat intoxicated driving and to protect public safety. See Piddington, 241 Wis. 2d 754, ¶ 42 ("The implied consent law is based upon the legitimate government interest of protecting the public welfare, to wit, removing drunk drivers from the road." (citing Proegler, 95 Wis. 2d at 631)). For example, a driver is deemed to have consented to testing upon arrest, but only if the offense for which the driver is arrested is one of certain enumerated intoxicated-driving offenses under Wis. Stat. § 346.63 or certain other offenses involving injury or homicide by intoxicated use of a vehicle. See Wis. Stat. § 343.305(3)(a). If none of the statutory circumstances exist, testing pursuant to the implied consent law is not permitted, though officers may still procure evidence through "any other lawful means." § 343.305(3)(c).
III. THE UNCONSCIOUS-DRIVER PROVISIONS
¶ 64. The unconscious-driver provisions of the implied consent law provide that, under certain circumstances, a driver "who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent." See Wis. Stat. § 343.305(3)(ar)-(b). Provided the other relevant statutory conditions are met, law enforcement may presume that an unconscious driver consents to the tests that are set forth in the statute, unless consent is revoked. The statute *508 contains no requirement that any driver, whether conscious or not, must expressly consent to testing; consent is deemed to have been given when the person voluntarily chose to drive on Wisconsin highways. See § 343.305(2).
¶ 65. Indeed, the informational statement that officers must read to a driver before administering the test is a notice of the consequences of refusal, not a "request" for consent. See Wis. Stat. § 343.305(4). The purpose of this notice is to advise drivers about the nature of their implied consent, not necessarily to provide a meaningful opportunity to decide whether to withdraw their consent. See Piddington, 241 Wis. 2d 754, ¶¶ 17, 20, 55 (holding that an analysis of the proper administration of the notice focuses on the objectively reasonable conduct of the officer, not "[w]hether the accused driver has actually comprehended the warnings"). "The entire tenor of the implied consent law is . . . that consent has already been given . . . ." Neitzel, 95 Wis. 2d at 203.
¶ 66. To summarize, the unconscious-driver provisions of the implied consent law put every driver on notice that, in the event he or she becomes unconscious and, for example, an officer has probable cause to believe the driver is guilty of a drunk-driving offense, the driver's previously given consent would remain unrevoked. I turn now to the question of whether Howes has met his burden to prove beyond a reasonable doubt that these provisions are unconstitutional.
IV. APPLICABLE FOURTH AMENDMENT PRINCIPLES
¶ 67. The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and *509 effects, against unreasonable searches and seizures." U.S. Const, amend. IV. Courts will presume that a search was unreasonable if the officers did not have a warrant, but "[i]t is well established that a search is reasonable when the subject consents." Birchfield v. N. Dakota, 136 S. Ct. 2160, 2185 (2016). Specifically in the context of state implied consent laws, the Supreme Court has emphasized that "consent to a search need not be express but may be fairly inferred from context." Id. This court has likewise recognized that "[c]onsent to search need not be given verbally; it may be in the form of words, gesture, or conduct." State v. Phillips, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998).
A. Consent May Be Implied By Conduct
f 68. The principle of consent by conduct is neither new nor infrequently applied. In his treatise on the Fourth Amendment, Professor Wayne LaFave provides a number of examples in which "it is said that consent is 'implied' because it is found to exist merely because of the person's conduct in engaging in a certain activity." 4 Wayne R. LaFave, Search and Seizure § 8.2(1), at 162-63 (5th ed. 2012). For example, "a warrantless search of a person seeking to enter a military base may be deemed reasonable based on the implied consent of the person searched," Morgan v. United States, 323 F.3d 776, 778 (9th Cir. 2003), and consent "may be implied from [the] act of driving past the guard shack and onto [the base] and imputed from the posted notice indicating that entry onto [the base] constituted consent to a search," State v. Torres, 262 P.3d 1006, 1022 (Haw. 2011). Another analogous situation concerns a "business owner in a highly regulated or licensed industry" who "in effect consents to the restrictions put in place by the government." United *510 States v. Hamad, 809 F.3d 898, 905 (7th Cir. 2016).[7] Similarly, some courts have justified airport screening searches based on implied consent, reasoning that "[t]he signs in the terminal gave [passengers] fair notice that if in the course of the total screening process a physical inspection of [their] hand luggage should be considered necessary. . . [they] could be required to submit to it...." United States v. DeAngelo, 584 F.2d 46, 47-48 (4th Cir. 1978); see State v. Hanson, 34 P.3d 1, 4-7 (Haw. 2001) (collecting cases).[8]
B. The Limits of Implying Consent By Conduct
¶ 69. Of course, there must be a limit to the scope of the consent that may be implied by a person's conduct. See Birchfield, 136 S. Ct. at 2185. Consent "cannot be said to exist merely because a person (a) knows that an official intrusion into his privacy is contemplated if he does a certain thing, and then (b) proceeds to do that thing." LaFave, supra, at 164-65 (emphasis added). A reviewing court must also consider the scope and the voluntariness of the individuals' consent under the particular implied consent *511 scheme presented. See, e.g., Birchfield, 136 S. Ct. at 2186 (remanding to state court to revisit voluntariness of consent, in light of holding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense").
¶ 70. A federal case out of the Seventh Circuit is helpful in illustrating how both the scope and the voluntary nature of the consent implied by conduct are evaluated by what is reasonable under the particular circumstances. Where a parking lot for government employees had signs posted stating that all vehicles were "subject to search," the mere conduct of parking in the lot did not imply consent to a sudden, unprecedented search of all vehicles because the vague signs gave no reason to expect such a singular suspicionless search. McGann v. Ne. Ill. Reg'l Commuter R.R. Corp., 8 F.3d 1174, 1176, 1182-83 (7th Cir. 1993); see also State v. Iaccarino, 767 So.2d 470, 477 (Fla. Dist. Ct. App. 2000) (holding that implied consent to searches at festival entrance did not extend to intrusive drug searches, because a "reasonable person would conclude from the signs posted at the gate that the search was limited to cans, bottles, and the contents of coolers or backpacks,.. . [not] wallets, pockets, and underwear").
V. APPLICATION
¶ 71. I now apply these principles to the unconscious-driver provisions of Wisconsin's implied consent law, in light of Howes' arguments. Howes argues that, under the Supreme Court's recent decisions in Missouri v. McNeely, 133 S. Ct. 1552 (2013), and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), authorizing warrantless blood tests of unconscious drivers based solely on their implied consent creates an unreasonable per se exception to the warrant re *512 quirement. I therefore address McNeely and Birchfield to explain why they do not support the result that Howes suggests. I then examine the reasonableness of the law's presumption that a person has impliedly consented to testing while unconscious, and I conclude that it does not violate the Fourth Amendment.
A. McNeely and Birchfield
¶ 72. In McNeely, the Supreme Court held that the natural dissipation of alcohol in the bloodstream does not constitute a per se exigency that always justifies a warrantless blood draw. McNeely, 133 S. Ct. at 1563. Although Howes points to broad language in McNeely that emphasizes the intrusive nature of a blood draw and the need for an examination of the totality of the circumstances, the holding in McNeely is limited only to the question of exigent circumstances. The McNeely Court "pointedly did not address" any other exceptions to the warrant requirement. Birchfield, 136 S. Ct. at 2174. Here, the State does not ground its argument in exigent circumstances, but rather bases its case entirely upon the consent exception to the warrant requirement. So, put simply, Mc-Neely is inapplicable to the question before us, that is, whether the unconscious-driver provisions of Wisconsin's implied consent law are unconstitutional.
¶ 73. With Birchfield, we get closer to the mark. In Birchfield, the Supreme Court held, inter alia, that it was unreasonable to deem a driver "to have consented to submit to a blood test on pain of committing a criminal offense." Birchfield, 136 S. Ct. at 2186. But Wisconsin's implied consent law does not threaten the criminal penalties that Birchfield disapproved; instead, the result of refusal is that the officer shall "prepare a notice of intent to revoke, by court order *513 under sub. (10), the person's operating privilege." Wis. Stat. § 343.305(9)(a). A court-ordered revocation under § 343.305(10) is not a criminal penalty.[9] Therefore, nothing in Birchfield undermines the longstanding provisions of Wisconsin's implied consent law.
¶ 74. On the contrary, the Supreme Court stated in Birchfield that" [i]t is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context." Birchfield, 136 S. Ct. at 2185 (citations omitted). The Court continued, "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." Id. (emphasis added) (citations omitted). Far from disapproving the concept of consent by conduct within the context of a driver's implied consent, the Court expressly endorsed the general validity of state implied consent laws that infer motorists' consent to testing from the conduct of driving.
*514 B. Drivers in Wisconsin Consent to Testing By Choosing to Drive With Notice of Their Responsibilities
¶ 75. Howes argues that it is unreasonable to presume that a driver has consented to testing merely by the conduct of driving on state highways. However, the understanding that a driver's voluntary consent to testing of blood, breath, or urine is validly implied by the conduct of driving has been consistently recognized in this court's cases. See, e.g., Zielke, 137 Wis. 2d at 48 ("The consent is implied as a condition of the privilege of operating a motor vehicle upon state highways."); Neitzel, 95 Wis. 2d at 203 ("The entire tenor of the implied consent law is . . . that consent has already been given . . . ."). In Neitzel, we concluded that an arrestee does not have a statutory right to consult with counsel about whether to refuse testing, because "a lawyer cannot induce his client to recant a consent previously given knowingly and voluntarily." Neitzel, 95 Wis. 2d at 201 (emphasis added). At the time the defendant chose to drive, "he was fully cognizant of his rights and was deemed to know that, in the event he was later arrested for drunken driving, he had consented ... to chemical testing under the circumstances envisaged by the statute." Id. Put simply, consent to testing had already been given, and it remained valid until withdrawn.[10]
*515 ¶ 76. Inferring consent to testing from the conduct of driving appears essential to the validity of the warrantless blood test that occurred in State v. Disch, 129 Wis. 2d 225, 385 N.W.2d 140 (1986), where this court upheld a blood test of a driver who was "in a stupor" and "did not seem able to concentrate." Id. at 236. The only basis for this ruling was the same statutory language that Howes now challenges. See id. at 236-38. Therefore, unless this court has had a sudden change of heart unsignaled over the course of the past thirty years of its jurisprudence on the implied consent law, it would appear that Howes should receive the same result that Disch received.
f 77. Wisconsin is not the only jurisdiction to recognize that consent to testing is implied when a person operates a motor vehicle and continues until it is revoked. The Idaho Supreme Court recognizes that drivers "give their initial consent to evidentiary testing by driving on Idaho roads voluntarily," and such consent will "qualify as voluntary" so long as the driver "continuéis] to give voluntary consent." State v. Wulff, 337 P.3d 575, 582 (Idaho 2014). Applying this rule to an apparently unconscious driver, Idaho's court of appeals recognized the validity of the driver's implied consent under the Fourth Amendment, because "[t]he fact that [the driver] was allegedly unconscious when the officer read her the advisory does not effectively operate as a withdrawal of her consent." Bobeck v. Idaho Transp. Dep't., 363 P.3d 861, 866-67 (Idaho Ct. App. 2015). Further, the court held that the officers had no duty "to *516 ensure comprehension of a person who is under the influence to the point of being semi-conscious or unconscious at times." Id. at 865.
¶ 78. I acknowledge that other courts have found that the implied consent of an unconscious driver cannot justify a warrantless blood draw. See, e.g., People v. Arredondo, 199 Cal. Rptr. 3d 563 (Cal. Ct. App. 2016), modified on denial of reh'g (Mar. 24, 2016), review granted, 371 P.3d 240 (Cal. 2016); Bailey v. State, 790 S.E.2d 98 (Ga. App. 2016); State v. Romano, 785 S.E.2d 168 (N.C. Ct. App. 2016), review granted, 794 S.E.2d 315 (N.C. 2016) review granted, writ granted, 794 S.E.2d 317 (N.C. 2016); State v. Ruiz, _ S.W.3d _, 2015 WL 5626252 (Tex. App. Aug. 27, 2015), vacated, No. PD-1362-15, 2017 WL 430291 (Tex. Crim. App. Feb. 1, 2017) (per curiam).
¶ 79. At first blush, this appears to be a significant list of courts with holdings inapposite to that which I advocate today. However, the holdings in those cases all assume that McNeely (the exigent circumstances case) controls the outcome in implied consent cases. See, e.g., Bailey, 790 S.E.2d at 104 ("In light of McNeely . . . implied consent was insufficient to satisfy the Fourth Amendment. . . ."). Both as a matter of logic and in light of the relevant language in Birchfield (decided after McNeely), I fail to see how that can be the case. Because McNeely does not control as to the application of the consent exception to the warrant requirement, I reach a different conclusion than other jurisdictions do.
C. The Scope of Consent Is Reasonable
¶ 80. I conclude that the unconscious-driver provisions are reasonable in light of the clarity and *517 specificity of the notice given and the strict statutory parameters for the occasion and manner of testing.
¶ 81. First, the notice given in the statute is clear: a test may be performed on a driver while he or she is unconscious, Wis. Stat. § 343.305(3)(ar)-(b), and continuing consent to testing is deemed to exist by virtue of the operation of a motor vehicle, § 343.305(2). A driver is "deemed to know" the conditions imposed by the implied consent law, Neitzel, 95 Wis. 2d at 201, and the conditions in the unconscious-driver provisions are unequivocal.
f 82. Second, the notice given is much more specific than the vague, generalized notices rejected by the Seventh Circuit in McGann and by the Florida District Court of Appeal in Iaccarino. In those cases, generic "subject to search" notices did not provide fair notice of the extensive searches actually performed, and it was therefore unreasonable to deem individuals to have consented to those searches. See McGann, 8 F.3d at 1176, 1183; Iaccarino, 767 So.2d at 477-80. But as the Florida court suggested in Iaccarino, providing a clearer and more specific notice would have been enough to establish consent. Iaccarino, 767 So.2d at 480. Here, the statute explicitly notifies all drivers that they will be deemed to have consented to the tests (not to the choice of testing or revocation), in particular circumstances specifically tailored to combating the dangers of intoxicated driving. Unlike the parking lot in McGann, where unwarned and unprecedented searches were held unreasonable based on a vague notice, the State provides notice through its statutes of its regularly performed tests, and drivers have no reason to expect otherwise.
¶ 83. Further, tests may be performed on an unconscious person only in specific situations. Testing *518 may be performed if an officer has probable cause to arrest the driver, but only if the arrested offense is one of certain enumerated intoxicated-driving offenses under Wis. Stat. § 346.63 or certain other offenses involving injury or homicide by intoxicated use of a vehicle. See Wis. Stat. § 343.305(3)(b). But if the driver has not been arrested, testing of an unconscious person is limited to cases involving an accident causing bodily harm and either the presence of alcohol or a violation of law. § 343.305(3)(ar)1.-2. Also, if the test is a blood test, it may be administered "only by a physician, registered nurse, medical technologist, physician assistant, phle-botomist, or other medical professional who is authorized to draw blood, or person acting under the direction of a physician." Wis. Stat. § 343.305(5)(b) (2015-16). These conditions circumscribe the scope of the testing, and testing an unconscious person outside of them requires a warrant, exigent circumstances, or "other lawful means." § 343.305(3)(c).
¶ 84. In the final analysis," [i]t is the motorist who has voluntarily asserted his or her autonomy" in deciding to drive, State v. Wintlend, 2002 WI App 314, ¶ 19, 258 Wis. 2d 875, 655 N.W.2d 745, and "voluntary consent to a blood draw is not negated by the fact that consent was procured by informing a suspect that the alternative is a penalty," Padley, 354 Wis. 2d 545, ¶ 72 (citing Vill. of Little Chute v. Walitalo, 2002 WI App 211, 256 Wis. 2d 1032, 650 N.W.2d 891). Howes exercised his autonomy by electing to drive under the conditions all drivers in Wisconsin accept, and he has not developed —much less perfected—any argument as to why, if a driver's voluntary consent to testing may be implied from the conduct of driving, the blood test performed on him was not authorized by his implied consent.
*519 VI. CONCLUSION
¶ 85. No warrant is required in order to administer the tests to which a driver has impliedly consented, even if the driver is found unconscious. Voluntary consent to testing can be presumed from the decision to drive made with notice of the statutory requirements and in the absence of any expressed intent to revoke such consent. Further, this presumption that an unconscious driver does not withdraw consent is not per se unreasonable under the Fourth Amendment. Therefore, I cannot conclude that Howes has met his burden to prove beyond a reasonable doubt that the unconscious-driver provisions of the statute are facially unconstitutional and "cannot be constitutionally enforced under any circumstances." Society Ins., 326 Wis. 2d 444, ¶ 26. I conclude that the circuit court erred in striking down the statute as facially unconstitutional and in suppressing the results of the blood test on that basis.
¶ 86. For the foregoing reasons I concur.
¶ 87. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.

 Wis. Stat. § 343.305(2) provides, in full:
IMPLIED CONSENT. Any person who is on duty time with respect to a commercial motor vehicle or drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s. 346.61, is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b). Any such tests shall be administered upon the request of a law enforcement officer. The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (3)(a), (am), or (ar), and may designate which of the tests shall be administered first.

 Wis. Stat. § 343.305(3)(a) provides, in relevant part:
*502 Upon arrest of a person for violation of s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or for a violation of s. 346.63(2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or upon arrest subsequent to a refusal under par. (ar), a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (2).
Subsection (3)(am) includes similar provisions that apply when the "officer detects any presence of alcohol... on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person is violating or has violated s. 346.63(7)."

 Wis. Stat. § 343.305(3)(ar)l. applies if "a person is the operator of a vehicle that is involved in an accident that causes substantial bodily harm, as defined in s. 939.22(38), to any person, and a law enforcement officer detects any presence of alcohol, a controlled substance, a controlled substance analog or other drug, or a combination thereof." Subsection (3)(ar)2. applies if "a person is the operator of a vehicle that is involved in an accident that causes the death of or great bodily harm to any person and the law enforcement officer has reason to believe that the person violated any state or local traffic law." Both provisions provide that a "person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subdivision and one or more samples specified in par. (a) or (am) may be administered to the person." Wis. Stat. § 343.305(3)(ar)l.-2.
Additionally, Wis. Stat. § 343.305(3)(b) provides, in full:
A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or s. 346.63(2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or detects any presence of alcohol, controlled substance, controlled substance analog or other drug, *503 or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person has violated s. 346.63(7), one or more samples specified in par. (a) or (am) may be administered to the person.

 This situation was governed by Wis. Stat. § 343.305(3)(b), because the deputy had probable cause to believe Howes was guilty of operating a motor vehicle with a prohibited alcohol concentration, in violation of Wis. Stat. § 346.63(l)(b).

 I will refer to these provisions collectively as the "unconscious-driver provisions" of the implied consent law.

 This case also presents an as-applied challenge to the statute, but Howes does not develop any distinct argument to support his as-applied challenge. Rather, he states that his challenge is "as-applied only insofar as his Fourth Amendment rights were personally violated by the State's conduct under the general auspices of the provisions in question when the blood draw was performed." Howes "does not believe that any variation in the circumstances (except for the crucial one—• incapacitation, which brings him within the purview of the provision in the first place) would materially affect the analysis." Therefore, if the unconscious-driver provisions can be constitutionally applied, Howes does not dispute that they were constitutionally applied to him.

 Although the cases involving warrantless inspections of highly regulated businesses do not rely on consent as the basis for the reasonableness of such searches, the rationale in those cases is analogous in that the inspections are reasonable in part because a business owner chooses to enter the regulated field and the government regulations supply notice of the scope and frequency of inspections. See United States v. Biswell, 406 U.S. 311, 316 (1972).

 Some more recent decisions hold that consent is not required at all in the airport screening context, because such searches are reasonable under the administrative search doctrine. See, e.g., United States v. Aukai, 497 F.3d 955, 960 (9th Cir. 2007); United States v. Hartwell, 436 F.3d 174, 178-81 (3d Cir. 2006).

 A revocation under Wis. Stat. § 343.305(10) has other consequences, but they are not criminal penalties for the withdrawal of consent. For example, Wis. Stat. § 343.307(1)(f) provides that a revocation under § 343.305(10) is counted in determining the penalty for operating a motor vehicle while intoxicated in violation of Wis. Stat. § 346.63(1). But that penalty is imposed only on the subsequent criminal offense of drunk driving, not on the earlier withdrawal of consent to testing under the implied consent law. Unlike the North Dakota law at issue in Birchfield, which made the refusal itself a misdemeanor in the first instance, see Birchfield, 136 S. Ct. at 2170-71, a person's withdrawal of consent to a blood test under Wisconsin's implied consent law is not a criminal offense.

 Howes argues that a recent court of appeals decision, State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, stands for the contrary proposition. In Padley, the court of appeals rejected "the State's incorrect view that. . . 'implied consent1 alone can 'serve as a valid exception to the warrant requirement.'" Id., ¶ 37. However, Padley did not cite authority for its rejection of the validity of a driver's implied consent as an exception to the warrant requirement, nor was such a conclusion necessary to decide the case, because the driver in *515 Padley consented expressly. See id., ¶ 11.1 reject Padley's view as having no basis in law and as inconsistent with the Supreme Court's analysis of a state implied consent law under the principle that "consent to a search need not be express but may be fairly inferred from context." Birchfield, 136 S. Ct. at 2185.