IN the MATTER OF the REFUSAL OF Eric D. SMITH:

WASHBURN COUNTY, Plaintiff-Respondent,

v.

Eric D. SMITH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2006AP3163. Oral argument February 29, 2008. —Decided March 28, 2008.*

2008 WI 23

(Also reported in 746 N.W.2d 243.)

For the defendant-appellant-petitioner there were briefs by *Kevin J. Mulrooney, Kirk B. Obear,* and *Melowski, Obear & Cohen, S.C.,* Elkhart Lake, and oral argument by *Kirk B. Obear.*

For the plaintiff-respondent there was a brief and oral argument by *Daniel J. Tolan,* assistant district attorney.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, Eric D. Smith, seeks review of an unpublished decision of the court of appeals affirming an order of the Circuit Court for Washburn County, Eugene D. Harrington, Judge.[1] At a statutory refusal hearing, the circuit court revoked the defendant's operating privileges for refusing to submit to a test to determine the presence or quantity of alcohol. The circuit court determined that the defendant improperly refused to submit to chemical testing under Wisconsin's Implied Consent Law, Wis. Stat. § 343.305 (2003–04).[2] The circuit court ordered the defendant's operating privileges revoked for twelve months. The charge of operating a motor vehicle while under the influence of an intoxicant remains pending.

¶ 2. The issues at a statutory refusal hearing are limited to, inter alia, whether the officer had probable

---

[1] *Washburn County v. Smith,* No. 2006AP3163, unpublished slip op. (Wis. Ct. App. May 8, 2007).

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

cause to believe that the person was driving or operating a motor vehicle while under the influence and whether the officer complied with Wis. Stat. § 343.305(4) governing the information the officer shall read to the person from whom the test specimen is requested.[3]

¶ 3. Two issues are presented on review of the decision of the court of appeals affirming the circuit court's order revoking the defendant's operating privileges during the refusal hearing:

I. Did the circuit court err in determining in the refusal hearing that the law enforcement officer had probable cause to arrest the defendant for operating a motor vehicle while under the influence of an intoxicant?

II. Did the circuit court err in determining in the refusal hearing that the defendant improperly refused to submit to chemical testing?

¶ 4. This court is reviewing the rulings of the circuit court at the refusal hearing.

¶ 5. We affirm the decision of the court of appeals affirming the circuit court's order revoking the defendant's operating privileges. The circuit court did

[3] Wis. Stat. § 343.305(9)(a)5. *See also State v. Nordness,* 128 Wis. 2d 15, 28, 381 N.W.2d 300 (1986) (holding that the issues at a statutory refusal hearing are limited to whether the officer had probable cause to believe that the person was driving under the influence of alcohol; whether the officer complied with the informational provisions of the Implied Consent Law; whether the person refused to permit the test; and whether the refusal to submit to the test was due to a physical inability).

If any issue is determined favorably to the person, the circuit court shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question. Wis. Stat. § 343.305(9)(d).

not err in concluding that the state presented sufficient evidence at the refusal hearing to establish the officer's probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. The circuit court did not err in holding that the defendant improperly refused to submit to chemical testing.

¶ 6. We shall state the facts relevant to each issue in discussing that issue.

I

¶ 7. The defendant urges that the evidence presented at the refusal hearing established that the law enforcement officer had only a reasonable suspicion that the defendant operated a motor vehicle while under the influence of an intoxicant. In deciding whether the circuit court erred in determining in the refusal hearing that Deputy Sutherland had probable cause to arrest the defendant for operating a motor vehicle while under the influence of an intoxicant, we first state the facts surrounding the arrest and then answer the question of probable cause.

A

¶ 8. Here are the facts. At approximately 2:40 a.m. on July 23, 2006, Deputy Shawn Sutherland of the Washburn County Sheriff's Department observed the defendant's vehicle traveling on a two-lane highway at a rate of speed that appeared to be well above the posted speed limit of 55 miles per hour. The Deputy's stationary radar indicated that the defendant's vehicle was traveling at 76 miles per hour, 21 miles per hour in excess of the posted speed limit.

¶ 9. The Deputy activated his emergency lights and followed the defendant. While in pursuit, the Deputy observed that the defendant seemed to have "a delayed response" in pulling over. Deputy Sutherland estimated that the defendant continued to travel down a curved portion of the highway for approximately three-tenths of a mile after the officer activated his emergency lights. The Deputy also observed the defendant's vehicle cross the highway's double-yellow centerline twice before the defendant pulled over.

¶ 10. Once the defendant pulled over, the Deputy approached the driver's side of the vehicle and initiated conversation with the defendant. The Deputy detected the odor of alcohol on the defendant's breath and asked the defendant how much he had been drinking that night. The defendant responded that he had consumed "a couple of beers" at Grandma Link's Restaurant and Bar.

¶ 11. Later in the conversation, the defendant also told the Deputy that he would be lying if he said he had just a couple beers. Deputy Sutherland asked the defendant how long he had been drinking that night. The defendant replied that he had consumed more than two beers between the hours of 4:00 p.m. and just prior to being stopped at 2:40 a.m.

¶ 12. The Deputy testified that he formed the opinion that the defendant was too intoxicated to operate a motor vehicle safely. The Deputy also testified that he formed this opinion on the basis of the excessive speed at which the defendant was driving; the fact that the defendant crossed the highway's centerline while being pursued; the odor of intoxicants on the defendant's breath; and the amount of alcohol that the defendant admitted to having consumed. Deputy Sutherland placed the defendant under arrest for operating a motor vehicle

while under the influence of an intoxicant and transported the defendant to the Washburn County jail.[4]

¶ 13. The defendant urges that this court reverse the circuit court's holding of probable cause on the ground that the evidence presented at the refusal hearing established that the law enforcement officer had only a reasonable suspicion that the defendant operated while intoxicated, which is not sufficient to justify an arrest.

B

¶ 14. The issue presented is whether the circuit court erred in ruling in the refusal hearing that the law enforcement officer had probable cause to arrest the defendant for operating a motor vehicle while under the influence of an intoxicant. The circuit court could not revoke the defendant's operating privileges based on the defendant's refusal to submit to chemical testing unless the defendant's arrest was based on probable cause.[5]

¶ 15. In the context of a refusal hearing following an arrest for operating a motor vehicle while intoxicated, "probable cause" refers generally to that quan-

---

[4] Operating a motor vehicle while under the influence of an intoxicant is prohibited under Wis. Stat. § 346.63. Section 346.63(1) provides in relevant part that "[n]o person may drive or operate a motor vehicle while: . . . (b) The person has a prohibited alcohol concentration."

[5] *See* Wis. Stat. § 343.305(9)(a)5.a. (providing that at a refusal hearing, the court considers the issue whether the defendant "was lawfully placed under arrest for violation of s. 346.63(1) . . ."); Wis. Stat. § 343.305(9)(d) (providing that if one or more issues considered under § 343.305(9)(a)5. is determined favorably to the defendant, "the court shall order that no action be taken on the operating privilege on account of the person's refusal" to submit to chemical testing).

tum of evidence that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.[6] The burden was on the state in the instant case to present evidence sufficient to establish the officer's probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.[7]

¶ 16. Whether probable cause to arrest exists in a given case is a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.[8]

¶ 17. In arguing that the Deputy did not have probable cause to arrest him for operating a motor vehicle while under the influence of an intoxicant, the defendant contends that no evidence existed of slurred speech, difficulty standing, bloodshot eyes, or other indicia of intoxication. The defendant relies principally upon two decisions of this court to support his position that the Deputy did not have probable cause to arrest him for operating a motor vehicle while under the influence of an intoxicant: *State v. Seibel,* 163 Wis. 2d 164, 471 N.W.2d 226 (1991), and *State v. Swanson,* 164 Wis. 2d 437, 475 N.W.2d 148 (1991). Neither case supports the defendant.

---

[6] *Nordness,* 128 Wis. 2d at 35.

[7] *Id.*

[8] *State v. Woods,* 117 Wis. 2d 701, 710, 345 N.W.2d 457 (1984) ("If the historical facts are undisputed, probable cause for an arrest is a question of law that is subject to independent review on appeal, without deference to the trial court's conclusion.").

¶ 18. In *Seibel,* a law enforcement officer arrested Seibel for homicide by negligent use of a motor vehicle after Seibel's motorcycle crossed a highway centerline, sideswiped an oncoming vehicle and caused the death of the vehicle's two occupants.[9] Seibel subsequently agreed to provide the officer with a blood sample for purposes of a blood alcohol test.[10] The State charged Seibel with two counts of homicide by intoxicated use of a vehicle, along with other crimes involving operation of a motor vehicle while under the influence of an intoxicant.[11]

¶ 19. Seibel moved to suppress the results of his blood alcohol test on the ground that probable cause did not exist to arrest him for operating a motor vehicle while under the influence of an intoxicant and that the State's act of drawing a blood sample from Seibel constituted an unlawful search in violation of the Fourth Amendment.[12]

¶ 20. The *Seibel* court did not address the question whether the State had probable cause to arrest Seibel for operating a motor vehicle while under the influence of an intoxicant.[13] Rather, in *Seibel* the court concluded that when the officer had probable cause to arrest Seibel for homicide caused by negligent operation of a motor vehicle,[14] the State need prove only

---

[9] *State v. Seibel,* 163 Wis. 2d 164, 167–69, 471 N.W.2d 226 (1991)

[10] *Id.* at 169.

[11] *Id.*

[12] *Id.* at 170.

[13] The State did not argue that such probable cause existed.

[14] Seibel did not dispute the existence of probable cause for his arrest on this charge.

reasonable suspicion to believe that the driver's blood contained evidence to take a blood sample incident to the arrest.

¶ 21. The *Seibel* court determined that the law enforcement officers had reasonable suspicion to believe that Seibel's blood contained evidence of the crime of homicide by negligent operation of a motor vehicle, namely evidence that Seibel had imbibed an amount of alcohol sufficient to lessen or impair his ability to exercise ordinary care behind the wheel.[15] The court identified four indicia of drinking that collectively established reasonable suspicion: Seibel's unexplained erratic driving leading to a serious accident; a strong odor of intoxicants emanating from Seibel's traveling companions (who had been driving their motorcycles with Seibel as Seibel drove his); one officer's belief that he also smelled an intoxicant on Seibel; and Seibel's belligerence and lack of contact with the reality that he was at fault for the accident resulting in the victims' deaths.[16]

¶ 22. *Seibel* is not, however, dispositive of the present case. The *Seibel* court never considered whether the State could meet the probable cause standard for an arrest for driving while under the influence. Rather, the *Seibel* court addressed only the questions whether law enforcement officers had probable cause to arrest Seibel for operating a motor vehicle negligently and causing a homicide, and whether they had reasonable suspicion supporting a belief that Seibel's blood contained evidence of the crime of homicide by negligent operation of a motor vehicle.

---

[15] *Seibel,* 163 Wis. 2d at 180.

[16] *Id.* at 181–83.

¶ 23. Moreover, in the present case the Deputy had knowledge of significant indicia of intoxication that were not present in *Seibel*. The defendant admitted to the Deputy that the defendant had consumed alcohol prior to driving and supplied inconsistent and equivocal information regarding the amount of alcohol that he had consumed, first stating that he had consumed a couple of beers and later stating that he would be lying if he said he had consumed just a couple of beers. The defendant also admitted that he had been at a bar for more than ten hours immediately preceding his encounter with the Deputy.

¶ 24. The defendant also relies on *Swanson,* arguing that *Swanson* requires that a field sobriety test had to have been performed if the State is to establish probable cause to arrest the defendant for driving while operating under the influence.[17]

¶ 25. In *Swanson,* law enforcement officers observed Swanson drive his automobile onto the sidewalk in front of a tavern at approximately 2:00 a.m. and nearly hit at least one pedestrian.[18] The officers approached Swanson to speak to him about the incident and detected an odor of intoxicants on Swanson's breath, but Swanson had no slurred speech or difficulty standing.

¶ 26. The officers who confronted Swanson apparently decided to administer a field sobriety test to Swanson inside their squad car and proceeded to per-

---

[17] The circuit court granted the defendant's unopposed motion to exclude testimony about the field sobriety test that was administered in the present case; the Deputy had failed to comply with a subpoena duces tecum directing him to bring his training manuals to the hearing.

[18] *State v. Swanson,* 164 Wis. 2d 437, 442, 475 N.W.2d 148 (1991).

form a pat-down search of Swanson prior to placing him in the vehicle. This search revealed a bag of marijuana in Swanson's pocket.[19]

¶ 27.　Upon receiving a request for backup assistance at a domestic disturbance, the officers aborted their plans to administer a field sobriety test. The officers placed Swanson under arrest for possession of marijuana and put Swanson in the back of the squad car.[20] Swanson accompanied the officers to the domestic disturbance call and then escaped when left alone.[21] Swanson was later apprehended and charged with felony escape and possession of a controlled substance.[22] The circuit court dismissed the criminal complaint, concluding that the pat-down search and arrest of Swanson for possession of marijuana were unlawful under the Fourth Amendment.[23]

¶ 28.　This court held that the officers' pat-down search of Swanson could not be justified under *Terry v. Ohio,* 392 U.S. 1 (1968), as a pat-down search for weapons.[24] The *Swanson* court also held that the pat-down search could not be justified as a search incident to lawful arrest, because Swanson was not in fact under arrest at the time of the search.[25]

¶ 29.　The State argued in *Swanson* that the officers "could have" placed Swanson under arrest for a number of offenses, including operating a motor vehicle while under the influence of an intoxicant and reckless

[19] *Id.* at 442.
[20] *Id.* at 442–43.
[21] *Id.* at 443.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 445, 454.
[25] *Id.* at 452.

endangering safety, and that therefore the search was a valid search incident to an arrest.[26] The *Swanson* court refused "to carve out an exception to warrantless searches based solely on probable cause with no resulting arrest."[27] Because the State failed to show that an arrest for anything other than possession of a controlled substance was ever implied, attempted, or accomplished, the court refused to address whether probable cause existed to arrest Swanson for any of the other offenses.[28]

¶ 30. Nevertheless, the *Swanson* court addressed in a footnote the question of whether probable cause to arrest for any offense existed, stating that the officers "arguably" lacked probable cause to arrest Swanson for operating a motor vehicle while under the influence of an intoxicant or for the other offenses suggested by the State.[29] The defendant embraces this footnote in *Swanson*, arguing that in the absence of a field sobriety test, the indicia of intoxication in *Swanson* and in the present case support only a reasonable suspicion that the person was driving while intoxicated.

¶ 31. The *Swanson* court noted that officers had knowledge of three indicia of criminal conduct—namely Swanson's unexplained erratic driving, the odor of intoxicants on Swanson's breath, and the approximate time of the incident (about the time that bars close in Wisconsin)—and concluded that such indicia "form the basis for a reasonable suspicion but should not, in the absence of a field sobriety test, constitute probable cause to arrest someone for driving while under the

---

[26] *Id.* at 453.

[27] *Id.* at 453.

[28] *Id.*

[29] *Id.* at 453 n.6.

influence of intoxicants."[30] The court explained that without a field sobriety test, "the police officers could not evaluate whether the suspect's physical capacities were sufficiently impaired by the consumption of intoxicants to warrant an arrest."[31]

¶ 32. The relevant comments in the *Swanson* footnote are follows:

> Clearly, the officers here did possess a reasonable suspicion that Swanson had committed a criminal act, either operating under the influence or reckless endangerment, but arguably lacked probable cause to arrest Swanson at the time of the search. The first indicia of criminal conduct included Swanson's unexplained erratic driving. The second indicia included the odor of intoxicants emanating from Swanson as he spoke. The third indicia included the approximate time of the incident, which occurred at about the time that bars close in the state of Wisconsin. Taken together, these indicia form a basis for reasonable suspicion that Swanson was driving while intoxicated. See *State v. Seibel*, 163 Wis. 2d 164, 183, 471 N.W.2d 226 (1991), where we held that similar factors add up to a reasonable suspicion but not probable cause.
>
> ... Unexplained erratic driving, the odor of alcohol, and the coincidental time of the incident form the basis for a reasonable suspicion but should not, in the absence of a field sobriety test, constitute probable cause to arrest someone for driving while under the influence of intoxicants. A field sobriety test could be as simple as a finger-to-nose or walk-a-straight-line test. Without such a test, the police officers could not evaluate whether the suspect's physical capacities were sufficiently impaired

---

[30] *Id.* at 454 n.6.
[31] *Id.*

by the consumption of intoxicants to warrant an arrest.[32]

¶ 33. *Swanson* did not announce a general rule requiring field sobriety tests in all cases as a prerequisite for establishing probable cause to arrest a driver for operating a motor vehicle while under the influence of an intoxicant.

¶ 34. Furthermore, the *Swanson* court's statement pertained to the circumstances of that case.[33] The question of probable cause must be assessed on a case-by-case basis. *Swanson,* like *Seibel,* is distinguishable from the present case because the Deputy in the instant case had knowledge of significant indicia of intoxication that were not present in *Swanson.* The defendant in the present case, in contrast to Swanson, admitted that he had consumed an indeterminate number of drinks (but more than two) during a 10–hour stay at a bar prior to being pulled over.

¶ 35. The circumstances of the present case are similar to those in *State v. Wille,* 185 Wis. 2d 673, 684, 518 N.W.2d 325 (Ct. App. 1994), in that all circumstances have to be considered. In *Wille,* the court of appeals determined that in the context of a statutory refusal hearing, a law enforcement officer had probable cause to arrest Wille when the officer smelled intoxicants coming from Wille; knew that two other persons had smelled intoxicants coming from Wille; knew that Wille had

[32] *Id.* at 453–54 n.6.

[33] *See State v. Wille,* 185 Wis. 2d 673, 684, 518 N.W.2d 325 (Ct. App. 1994) ("The *Swanson* footnote does not mean that under all circumstances the officer must first perform a field sobriety test, before deciding whether to arrest for operating a motor vehicle while under the influence of an intoxicant.").

driven his automobile into the rear end of a car parked on the shoulder of a highway causing a serious accident; and heard Wille declare that had "to quit doing this."[34] The *Wille* court of appeals explained that Wille's declaration evinced a consciousness of guilt and determined that the declaration helped to distinguish that case from *Swanson*.[35]

¶ 36. We conclude that under the circumstances of the present case, the Deputy's knowledge at the time of the arrest would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. At the time of the arrest, the Deputy knew that the defendant had been driving well in excess of the speed limit late at night on a two-lane highway; that the defendant delayed pulling over after the deputy activated his emergency lights; that the defendant had twice driven across the centerline before pulling over; that the defendant had an odor of alcohol on his breath; that the defendant had admitted to consuming alcohol over a period of more than ten hours ending just prior to his encounter with the deputy; and that the defendant had supplied inconsistent and equivocal information regarding the amount of alcohol that he had consumed during that period of time. The state has met its burden of presenting evidence sufficient to establish that the Deputy had probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant and had probable cause to arrest him for this offense.

---

[34] *Wille*, 185 Wis. 2d at 683.

[35] *Id.* at 684.

¶ 37. For the reasons set forth, we conclude that the circuit court did not err in concluding that the state presented sufficient evidence at the refusal hearing to establish the officer's probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.

II

¶ 38. The defendant urges that he did not improperly refuse to submit to chemical testing. He contends that his refusal was not improper because the Deputy made two misstatements to the defendant regarding the penalties the defendant would incur for refusing to submit to a chemical test. In considering whether the circuit court erred in concluding that the defendant improperly refused to submit to chemical testing, we first state the facts surrounding the refusal and then consider the statutes and case law.

A

¶ 39. Here are the facts. When Deputy Sutherland and the defendant arrived at the Washburn County jail, the Deputy read, verbatim, a form to the defendant entitled "Informing the Accused." The form, promulgated by the Wisconsin Department of Transportation, incorporates the language in Wis. Stat. § 343.305(4) that the legislature requires a law enforcement officer to read when the officer requests that a person submit to chemical testing.

¶ 40. After reading the form, the Deputy asked the defendant whether he would submit to an evidentiary test of his breath.[36] The defendant was unsure

___

[36] Deputy Sutherland's post-arrest request that the defendant submit to chemical testing was authorized under Wis. Stat. § 343.305(3)(a). Section 343.305(3)(a) provides in relevant part as follows:

whether he wanted to submit to the test and expressed concern regarding the penalties that he might be facing.

¶ 41. According to the Deputy's testimony, prior to expounding upon the penalties that the defendant might face, the Deputy informed the defendant that he could not give the defendant legal advice. The Deputy then told the defendant that if the breath test registered a blood alcohol concentration over the legal limit of .08%, the defendant's operating privileges would be suspended for a period of six months. The Deputy further told the defendant that if the defendant refused to submit to the test, the defendant would face a one-year revocation of his operating privileges.

¶ 42. The Deputy offered conflicting testimony regarding statements he made to the defendant about the defendant's right to contest a revocation of operating privileges based on the defendant's refusal to submit to chemical testing. On direct examination, Deputy Sutherland testified that he told the defendant that the defendant would have a "ten-day period to request administrative review" if he refused to submit to chemi-

---

Upon arrest of a person for violation of s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or for a violation of s. 346.63(2) or (6) or 940.25, . . . a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (2). . . .

Under the Implied Consent Law, the defendant was deemed to have consented to the test requested by Deputy Sutherland when the defendant decided to drive upon a Wisconsin highway. Wisconsin Stat. § 343.305(2) provides in relevant part as follows:

Any person who . . . operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purposes of determining the presence or quantity in his or her blood or breath, of alcohol . . . when requested to do so by a law enforcement officer under sub. (3)(a) . . . ."

cal testing. On cross-examination, defense counsel asked Deputy Sutherland whether the Deputy remembered telling the defendant that "if he refused it's a 12–month revocation but you get a hearing within ten days." Deputy Sutherland replied, "Correct."

¶ 43. The inconsistency between Deputy Sutherland's two statements was never resolved.[37] Neither counsel for the state nor counsel for the defendant pointed out the inconsistency to the Deputy. The circuit court did not make a factual finding regarding whether the Deputy advised the defendant correctly that he could "request" an administrative hearing within ten days, or told the defendant incorrectly that he could "get" a hearing in ten days.

¶ 44. The defendant agreed to submit to a breath test. The Deputy set up the Intoximeter and instructed the defendant how to use it. The Deputy instructed the defendant to take a deep breath, to get a good seal around the Intoximeter's mouthpiece, and to provide a long, steady blow into the machine until the deputy told him to stop.

¶ 45. The defendant made one attempt to submit a breath sample using the Intoximeter, but this attempt was unsuccessful. The Deputy explained at the hearing that the defendant did not have a good seal around the mouthpiece and did not blow very hard into the Intoximeter and that it seemed like the defendant was attempting to blow around, not into, the Intoximeter's tube.

¶ 46. The Deputy testified that he confronted the defendant about the defendant's apparent attempt to

_____

[37] The questioning revealed that the conversation between the Deputy and the defendant had been recorded in some fashion, but no recording of the conversation is in the record.

blow around the Intoximeter's tube and that he tried to get the defendant to correct the problem. The defendant responded that he did not think he should take the breath test. The Deputy then asked the defendant if that was his final decision. The defendant replied that it was. The Deputy informed the defendant that he would consider the defendant's answer as a refusal to submit to the test.

¶ 47. The Deputy provided the defendant with a notice of intent to revoke the defendant's operating privilege.[38] The defendant requested a hearing (the refusal hearing) to contest revocation of his operating privileges.[39]

¶ 48. At the time of his arrest, the defendant had a Louisiana operator's license. Defense counsel asked Deputy Sutherland on cross-examination whether the Deputy was aware that the defendant had a Louisiana driver's license at the time of the arrest. Deputy Sutherland testified that he was aware that the defendant had a Louisiana operator's license.

¶ 49. Defense counsel also asked the Deputy whether he was aware that his statement of penalties applicable to the defendant did not accurately represent what happens to a Louisiana driver. The Deputy replied that he had no idea what happens in Louisiana. The

_____

[38] Wisconsin Stat. § 343.305(9)(a) provides in relevant part that "[i]f a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately take possession of the person's license and prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege. . . ."

[39] Wisconsin Stat. § 343.305(9)(a)4. entitles the defendant to "request a hearing on the revocation within 10 days by mailing or delivering a written request to the court whose address is specified in the notice."

Deputy testified that his statements to the defendant pertained to Wisconsin law.

¶ 50. The circuit court ordered the defendant's operating privileges revoked for 12 months based on the defendant's refusal to submit to chemical testing.

B

■

¶ 51. A refusal to submit to a chemical test for intoxication cannot result in revocation of operating privileges unless the person has first been adequately informed of his rights under the law.[40] The defendant contends that the Deputy made two mistakes in informing the defendant of his rights. First, the defendant asserts that the Deputy mistakenly advised the defendant, who held a Louisiana operator's license, of the penalties under Wisconsin law but failed to advise the defendant that he might incur different penalties under Louisiana law. Second, according to the defendant, the Deputy mistakenly told the defendant that if he refused to take the chemical test he would get a hearing within ten days.

¶ 52. The information that the Deputy had to convey to the defendant is governed by Wis. Stat. § 343.305(4), which sets forth the information that a law enforcement officer shall read to the person from whom the test sample is requested, as follows:

> INFORMATION. At the time that a chemical test specimen is requested under sub. (3) (a) or (am), the law enforcement officer shall read the following to the person from whom the test specimen is requested:

---

[40] *State v. Schirmang,* 210 Wis. 2d 324, 330, 565 N.W.2d 225 (Ct. App. 1997).

"You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.

This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified."

¶ 53. The parties and the circuit court agree, as do we, that the Deputy complied fully with Wis. Stat. § 343.305(4). The Deputy read the required statutory information verbatim to the defendant.

¶ 54. The problem arises in the instant case with respect to the Deputy's imparting information to the defendant in addition to the information provided the

88

defendant under Wis. Stat. § 343.305(4) and the defendant's assertion that the additional information was in error.

■

¶ 55. The interpretation and application of Wis. Stat. § 343.305 to undisputed facts is a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.[41] We examine the case law interpreting and applying Wis. Stat. § 343.305 to fact situations in which a law enforcement officer has given additional and incorrect information to the person from whom a test is requested.

¶ 56. The principal case is *County of Ozaukee v. Quelle,* 198 Wis. 2d 269, 542 N.W.2d 196 (Ct. App. 1995), in which the court of appeals set forth a three-pronged inquiry for assessing the information process mandated by Wis. Stat. § 343.305(4).[42] The *Quelle* court held that a circuit court must answer the following

---

[41] *State v. Rydeski,* 214 Wis. 2d 101, 106, 571 N.W.2d 417 (Ct. App. 1997).

[42] *County of Ozaukee v. Quelle,* 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995).

The *Quelle* court of appeals relied in part on *State v. Sutton,* 177 Wis. 2d 709, 503 N.W.2d 326 (Ct. App. 1993). Like *Quelle,* the *Sutton* case involved a law enforcement officer who imparted information in addition to that required by Wis. Stat. § 343.305(4) to a person. The officer in *Sutton* mistakenly informed Sutton that one possible penalty for refusing to submit to chemical testing was a jail sentence. *Sutton,* 177 Wis. 2d at 713–14. *Sutton* stands for the proposition that an overstatement of penalties supplied in excess of the requirements of § 343.305(4) is still substantial compliance unless the overstatement has a prejudicial effect on the driver. *See Sutton,* 177 Wis. 2d at 715. *See also Quelle,* 198 Wis. 2d at 279 (stating that in *Sutton,* "[a]lthough the police had misinformed the

three questions in the affirmative before determining that the information imparted by the law enforcement officer is inadequate:

> (1) Has the law enforcement officer not met, or exceeded his or her duty under §§ 343.305(4) . . . to provide information to the accused driver;
>
> (2) Is the lack or oversupply of information misleading;[43] and
>
> (3) Has the failure to properly inform the driver affected his or her ability to make the choice about chemical testing?[44]

¶ 57. Applying this three-prong inquiry to the facts before it, the *Quelle* court of appeals held that the officer had met his duty under Wis. Stat. § 342.305(4) but had exceeded his duty by going beyond the statutory duty of reading the information on the face of the form. The officer had advised Quelle that she could refuse to submit to the test.[45] The answer to the first-prong of the *Quelle* inquiry was in the affirmative. With regard to the second prong, the officer's advice was an accurate statement of the law. Thus the answer to the second-prong was in the negative, and Quelle failed

driver, [the court of appeals] nonetheless held that the revocation order was valid because there was no prejudicial effect on the driver").

[43] "'The term 'misleading' in the second *Quelle* prong was meant by [the court of appeals] to be synonymous with the term 'erroneous.' ". *State v. Ludwigson,* 212 Wis. 2d 871, 875, 569 N.W.2d 762 (Ct. App. 1997) (citing *County of Ozaukee v. Quelle,* 198 Wis. 2d 269, 282, 542 N.W.2d 196 (Ct. App. 1995)).

[44] *Quelle,* 198 Wis. 2d at 280.

[45] *Id.* at 282.

to satisfy the second prong.[46] Accordingly, the court of appeals concluded that the information supplied to Quelle was adequate.

¶ 58. Each party relies upon a different court of appeals' decision applying the *Quelle* three-prong inquiry for assessing the information process mandated by Wis. Stat. § 343.305(4). The defendant relies on *State v. Schirmang,* 210 Wis. 2d 324, 565 N.W.2d 225 (Ct. App. 1997). The State relies on *State v. Ludwigson,* 212 Wis. 2d 871, 875, 569 N.W.2d 762 (Ct. App. 1997).

¶ 59. In *Schirmang,* upon which the defendant relies, a law enforcement officer read Schirmang an Informing the Accused form, stating in relevant part, "If you . . . refuse to submit to chemical testing and you have two or more prior suspensions, revocations or convictions *within a five year period* . . . a motor vehicle owned by you may be equipped with an ignition interlock device, immobilized or seized and forfeited."[47] The form read by the officer was out of date. As a result, the officer failed to comply with the requirements of Wis. Stat. § 343.305(4). At the time the officer read the form, the applicable penalties applied if the driver "had two or more prior . . . convictions [for operating a motor vehicle under the influence of an intoxicant] *within the last ten years.*"[48] At the refusal hearing, it was stipulated that Schirmang had one conviction for operating a motor vehicle under the influence of an intoxicant within the last five years and a second conviction within the last ten years.[49]

---

[46] *Id.* at 285–86.

[47] *State v. Schirmang,* 210 Wis. 2d 324, 327, 565 N.W.2d 225 (Ct. App. 1997) (emphasis added in *Schirmang*).

[48] *Id.* at 328 (citing 1993 Wis. Acts 315 & 317).

[49] *Id.*

¶ 60. Applying the *Quelle* test, the court of appeals reversed the circuit court's order revoking Schirmang's operating privileges.

¶ 61. According to the court of appeals, Schirmang satisfied the three prongs of the *Quelle* test—the information did not satisfy Wis. Stat. § 343.305(4), the information was misleading, and Schirmang was prejudiced. The arresting officer read the incorrect Wis. Stat. § 343.305(4) information; the officer's statement was misleading because it understated the penalties applicable to Schirmang (falsely suggesting that the earlier of Schirmang's two convictions would not count against Schirmang); and the misinformation affected Schirmang's ability to make a rational choice because Schirmang could not weigh his factual circumstances against the actual statutory criteria that affected him.[50]

¶ 62. The circuit court had ruled against Schirmang on the ground that Schirmang "was not prejudiced by the misinformation because he presented no testimony that he would have submitted to testing had he been properly informed."[51] Citing *State v. Wilke*, 152 Wis. 2d 243, 448 N.W.2d 13 (Ct. App. 1989), the court of appeals rejected the circuit court's analysis of prejudice, stating that "there cannot be . . . substantial compliance with § 343.305(4), Stats., which our decisions require, when, as here, the penalties which would actually affect the driver, given his driving record, were misstated."[52]

---

[50] *Id.* at 330.

[51] *Id.* at 331.

[52] *Id.* (citing *Wilke*, 152 Wis. 2d at 251).

The cases require "substantial" compliance with Wis. Stat. § 343.305(4). *See, e.g., State v. Muente*, 159 Wis. 2d 279, 281, 464 N.W.2d 230 (Ct. App. 1990) (complete compliance with § 343.305(4) not required; substantial compliance will suffice);

¶ 63. The *Schirmang* court of appeals interpreted *Wilke* as holding that an officer necessarily fails to substantially comply with Wis. Stat. § 343.305(4) whenever the officer misstates penalties that would actually affect the driver given the driver's record. *Schirmang's* characterization of *Wilke* is not an accurate statement of the *Wilke* holding. The *Wilke* case involved a law enforcement officer's failure to give the defendant one component of the statutorily required information (relating to penalties), and the *Wilke* court of appeals rested its decision on this fact.[53] According to *Wilke,* if the circuit court determines that the officer failed to inform the accused in compliance with the statute, the circuit court " 'shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question.' Sec. 343.305(9)(d)."[54] The *Wilke* opinion says nothing about misstatements of penalties that would actually affect the driver.[55]

---

*State v. Wilke,* 152 Wis. 2d 243, 250, 448 N.W.2d 13 (Ct. App. 1989) (applying the requirement of "substantial" compliance).

In *Wilke* the court of appeals stated that "substantial compliance does require 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " *Wilke,* 152 Wis. 2d at 250 (citation omitted). In *Sutton* the court of appeals explained that "[t]he reasonable objective of sec. 343.305(4), Stats., is to require the officer to inform the arrestee of the possible sanctions resulting from his taking or refusing to take the test." *Sutton,* 177 Wis. 2d at 714.

[53] *Wilke,* 152 Wis. 2d at 248.

[54] *Id.*

[55] *Sutton,* 177 Wis. 2d at 712, also mischaracterized the holding in *Wilke.* The *Sutton* court of appeals interpreted *Wilke* as holding that "to obtain substantial compliance, the officer must not understate the penalties for either refusal to take the

93

■

¶ 64. The *Schirmang* court of appeals was correct, however, to rely upon *Wilke* in reaching its decision. *Schirmang,* like *Wilke,* involved a law enforcement officer's failure to give the defendant the statutorily required information.[56] Thus, the *Wilke* and *Schirmang* cases present the same fact situation. If the *Schirmang* court of appeals was to adhere to *Wilke,* the *Schirmang* court of appeals was required to reverse the circuit court's order revoking Schirmang's operating privileges. Language in *Quelle* (and any subsequent cases applying *Quelle*) stating that the *Quelle* three-prong inquiry, including prejudice, applies when a law enforcement officer fails to provide the statutorily required information is withdrawn. The *Wilke* analysis applies when a law enforcement officer fails to provide the statutorily required information.[57] According to

test or taking the test and obtaining an inappropriate test result." *Sutton,* 177 Wis. 2d at 713–14. The *Wilke* opinion included no language referring to understatements of penalties.

*Sutton*'s incorrect statement of the *Wilke* decision is not the same incorrect statement that is found in *Schirmang.* The *Schirmang* court of appeals did not suggest that it was relying upon *Sutton* in interpreting *Wilke.*

[56] Wisconsin Stat. § 343.305(4)(b) (1993–94) required law enforcement officers to provide the following information when requesting a chemical test specimen: "If testing is refused, a motor vehicle owned by the person may be immobilized, seized and forfeited or equipped with an ignition interlock device if the person has 2 or more prior suspensions, revocations or convictions within a 10–year period that would be counted under s. 343.307 (1) . . . ."

[57] In *Quelle,* the officer satisfied Wis. Stat. § 343.305(4) but supplied additional information.

If the *Quelle* court of appeals' three-prong inquiry were applied when the law enforcement officer had not met his or her

*Wilke,* the circuit court determines whether the officer failed to furnish the statutorily required information, and if it so determines, the circuit court orders that no action be taken on the operating privilege.

¶ 65. The instant case is unlike *Wilke* and *Schirmang; Wilke* and *Schirmang* therefore do not govern the instant case. In the instant case the Deputy correctly advised the defendant of the information set forth in Wis. Stat. § 343.305(4).

¶ 66. We turn to *Ludwigson,* upon which the state relies.

¶ 67. In *Ludwigson,* which was published shortly after *Schirmang* (and which does not mention *Schirmang*), the court of appeals determined that a law enforcement officer had given the information required under Wis. Stat. § 343.305(4) and also had provided Ludwigson with additional information. The officer attempted to explain the form in layman's terms, telling Ludwigson that the normal penalty for refusing to submit to a chemical test is a one-year revocation of driving privileges.[58] Because Ludwigson had a prior conviction for operating a motor vehicle while under the influence of an intoxicant, her penalty for refusing to submit to a chemical test could be a revocation period of two years.[59] The officer's additional information to

statutory duty under Wis. Stat. § 343.305(4), *Quelle* would be inconsistent with *State v. Wilke,* 152 Wis. 2d 243, 246–47, 448 N.W.2d 13 (Ct. App. 1989). In *Wilke,* a law enforcement officer failed to provide Wilke all the information required by § 343.305(4). The *Wilke* court of appeals concluded that failure to advise a person of a component of the penalties was not substantial compliance and reversed the circuit court's order revoking Wilke's operating privileges without discussing prejudice.

[58] *Ludwigson,* 212 Wis. 2d at 874 & n.1.

[59] *Id.* at 874 n.1.

Ludwigson understating the penalty to which Ludwigson was subject for refusing to submit to the test given Ludwigson's driving record amounted to giving Ludwigson incorrect information.[60]

¶ 68. The *Ludwigson* court of appeals ruled against Ludwigson, concluding that Ludwigson had failed to present any evidence to show that the erroneous information caused her to refuse to submit to chemical testing.[61] The *Ludwigson* court of appeals interpreted the third prong of the *Quelle* test to impose upon the person refusing to submit to the chemical test a burden of producing evidence sufficient to make a prima facie showing of a causal connection between the misleading statements and the refusal to submit to chemical testing.[62] Once the prima facie evidence has been submitted, the burden shifts to the State to prove otherwise.[63] Ludwigson had the ultimate burden of proving by a preponderance of the evidence that the

---

The court of appeals also held that a second statement made by the officer was misleading. The officer told Ludwigson that if she was not satisfied with her initial test, she could request an alternative test at her own expense. The court of appeals explained that this statement was misleading because under Wis. Stat. § 343.305(2) and (5), law enforcement agencies are required to administer an alternative chemical test at their own expense. *Ludwigson,* 212 Wis. 2d at 874 n.1.

[60] Under the second *Quelle* prong, "misleading" is synonymous with "erroneous." *Ludwigson,* 212 Wis. 2d at 875.

[61] *Ludwigson,* 212 Wis. 2d at 877.

[62] *Id.* at 876.

*See also id.* at 877 (citation omitted) ("When a party fails to produce any credible evidence as to an element [of the *Quelle* test], the party fails to meet his or her burden of proof as a matter of law.").

[63] *Ludwigson,* 212 Wis. 2d at 876.

erroneous additional information caused her to refuse to take the test.

¶ 69. The court of appeals determined that Ludwigson failed to carry even the burden of producing evidence sufficient to make a prima facie showing of a causal connection between the officer's misleading statements and Ludwigson's refusal to submit to chemical testing. Ludwigson never presented any evidence to show that the erroneous information caused her to refuse to submit to the test. She never took the stand on her own behalf. She was not able to point to anything supporting a finding of causation in her favor. The court of appeals rejected Ludwigson's argument that the erroneous information misled her as a matter of law.[64]

¶ 70. According to the *Ludwigson* court of appeals, when an officer gives information in addition to the information set forth in Wis. Stat. § 343.305(4) and when the additional information is erroneous, it is the defendant's burden to prove by a preponderance of the evidence that the erroneous additional information in fact caused the defendant to refuse to submit to chemical testing.[65]

¶ 71. *Ludwigson* is distinguishable from both *Wilke* and *Schirmang* on its facts and is distinguishable when these three decisions are read properly. Unlike *Wilke* and *Schirmang,* the *Ludwigson* case did not

---

[64] *Id.*

[65] *Id.* at 873.

*See also id.* at 876 ("The third prong of the *Quelle* test requires a fact-finding process by the trier of fact. . . . [T]he trial judge, acting as the trier of fact, assesses the credibility of the two sides and determines as a matter of fact whether the erroneous extra information caused the defendant to refuse to take the test.").

involve an officer's failure to provide the statutorily required information under Wis. Stat. § 343.305(4). *Ludwigson,* like *Quelle* and the instant case, involved an officer who met his duty under § 343.305(4) and then gave additional information alleged to be erroneous. The rule articulated in *Wilke* is not applicable to the facts in *Ludwigson* or in the instant case.

¶ 72. In sum, *Wilke* and *Schirmang* are cases in which the law enforcement officer failed to provide statutorily required information to the defendant. In such cases, *Wilke* governs and the defendant's operating privileges may not be revoked based on an improper refusal to submit to chemical testing. *Quelle* and *Ludwigson* are cases in which the law enforcement officer provided all the statutorily required information but then provided more information in excess of his duty under § 343.305(4). In such cases, the three-prong *Quelle* inquiry as interpreted in *Ludwigson* governs.

¶ 73. The instant case falls within the *Ludwigson* fact situation and rule rather than the *Schirmang* and *Wilke* fact situations and rule.

¶ 74. The defendant contends that *Schirmang* and *Ludwigson* contradict each other. The defendant points out that the *Schirmang* court of appeals ruled in favor of the driver, stating, in reliance on *Wilke,* that there cannot be substantial compliance with Wis. Stat. § 343.305(4) when the law enforcement officer misstates the penalties that would actually affect the driver given the driver's record. The *Ludwigson* court of appeals, however, ruled against the driver, even though the officer had understated the penalty that would actually apply to the driver if she refused to submit to the test.

¶ 75. We agree with the defendant that language in the two cases is inconsistent. As we have previously

explained, the *Schirmang* opinion is in error in stating that there cannot be substantial compliance with Wis. Stat. § 343.305(4) when the law enforcement officer misstates the penalties that would actually affect the particular driver in question given the driver's record. This language in *Schirmang* mischaracterizes the court of appeals' earlier decision in *Wilke.* Properly read, *Wilke* stands for the proposition that there cannot be substantial compliance with § 343.305(4) when the law enforcement officer fails to give the defendant the statutorily required information about penalties. Upon acknowledging the erroneous statement in *Schirmang,* we conclude that *Schirmang* and *Ludwigson* can be reconciled.

¶ 76. We now apply *Quelle* and *Ludwigson* to the present case.

¶ 77. With regard to the first prong of the *Quelle* inquiry, we agree with the circuit court, the state, and the defendant that the Deputy gave the defendant the information required by Wis. Stat. § 343.305(4). Deputy Sutherland read the Department of Transportation's Informing the Accused form verbatim to the defendant. This form accurately states the information that Wis. Stat. § 343.305(4) required Deputy Sutherland to read to the defendant. The present case therefore is not a *Wilke/Schirmang* case.

¶ 78. We also agree with the circuit court, the state, and the defendant that the Deputy gave the defendant more information than required by Wis. Stat. § 343.305(4). After discharging his duty under § 343.305(4) by reading the Department of Transportation's Informing the Accused form verbatim to the defendant, Deputy Sutherland went on to provide additional information to the defendant. The present

99

case is therefore governed by *Ludwigson*. The first prong of the three-prong *Quelle* inquiry is answered in the affirmative.

¶ 79. With regard to the second prong of the *Quelle* inquiry, the defendant contends that the additional information that the Deputy furnished the defendant was misleading, that is, erroneous, in two respects.

¶ 80. The defendant first argues that Deputy Sutherland gave the defendant erroneous information when the Deputy stated that the defendant's operating privileges would be suspended for six months if the defendant failed a breath test and that the defendant's operating privileges would be revoked for one year if the defendant refused to submit to the test. The defendant asserts that such information "was clearly a misstatement of the penalties that would actually befall" the defendant, because Louisiana law applicable to a Louisiana resident like the defendant "provides for either an administrative suspension of 90 days if a chemical test result shows a prohibited alcohol concentration, or a revocation of 180 days upon a refusal."[66] The defendant argues that the information regarding suspension or revocation of Wisconsin operating privileges was "wholly inapplicable to [the defendant]," inasmuch as the defendant had a Louisiana driver's license.[67]

¶ 81. We disagree with the defendant that the Deputy's statement of the applicable penalties was erroneous. The Deputy accurately stated the Wisconsin law. Regardless of whether the Deputy accurately stated the law of Louisiana, neither the deputy nor the defendant believed that the Deputy was stating the law of Louisiana.

[66] Brief and Appendix of Defendant-Appellant at 17.
[67] *Id.* at 18.

¶ 82. Officers impart information about Wisconsin law and cannot be required to decide whether another state's law might govern or to explain that other state's law. Imparting information about Wisconsin law is all that can be expected or required of Wisconsin law enforcement officers. The defendant's argument about Louisiana law is unconvincing.

¶ 83. The defendant also contends that the Deputy provided the defendant with erroneous information when the Deputy allegedly stated that if the defendant refused to submit to chemical testing, the defendant would be entitled to a hearing within ten days. As the defendant points out, the defendant was entitled to request a refusal hearing within ten days; he was not entitled to have such a hearing within ten days.[68]

¶ 84. The record does not conclusively show what the Deputy told the defendant about the hearing. For purposes of the present appeal, we assume (as the defendant contends) that the Deputy incorrectly told the defendant that he would be entitled to a refusal hearing within ten days.

¶ 85. The sole question remaining is whether the alleged erroneous information supplied by Deputy Sutherland in fact contributed to the defendant's decision to refuse chemical testing. The circuit court in the present case did not determine whether the alleged erroneous information provided by Deputy Sutherland contributed to the defendant's decision to refuse to take the test.

■

¶ 86. The absence of a finding about what the Deputy told the defendant and whether any misstatement contributed to the defendant's refusal to take the

---

[68] *See* Wis. Stat. § 343.305(9)(am)4.

test does not impair our ability to resolve the present case. The defendant failed to make a prima facie showing, as required by the *Ludwigson* case, that the Deputy's erroneous statement about a hearing contributed to the defendant's refusal to submit to chemical testing. Nor does the Deputy's testimony suggest that the defendant cared about the timing of the refusal hearing. The Deputy's testimony instead shows that the defendant initially decided to submit to chemical testing after his discussion with the Deputy and then changed his mind, apparently because he was unwilling to follow the proper procedure for submitting a breath sample. Even assuming that the defendant has satisfied the first two prongs of the *Quelle* inquiry, he has not satisfied the third prong.

¶ 87. For the reasons set forth, we conclude that the defendant improperly refused to submit to chemical testing under the Implied Consent Law.

\* \* \* \*

¶ 88. The circuit court did not err in concluding that the state presented sufficient evidence at the refusal hearing to establish the officer's probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. The circuit court did not err in holding that the defendant improperly refused to submit to chemical testing under the Implied Consent Law.

¶ 89. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order revoking the defendant's operating privileges.

*By the Court.*—The decision of the court of appeals is affirmed.