BLANCHARD, J.[1]
¶1 This is a statutory refusal hearing case involving a police request that Nathan Bise submit to a chemical test under Wisconsin's Implied Consent Law. See WIS. STAT. § 343.305(9). Bise, pro se, appeals the circuit court's order finding that Bise unlawfully refused to submit to a chemical test of his breath after his arrest on a charge of operating a motor vehicle while intoxicated. Bise asserts that his "main focus" is that the court lacked a sufficient factual basis to find that he improperly refused to submit to the requested test. Bise makes two additional arguments: (1) that the court "deprived" him of his "right to defend" himself, and (2) that the State failed to produce sufficient evidence that police had probable cause to believe that he had operated while intoxicated, which is a predicate to a finding of improper refusal. I reject all three arguments and accordingly affirm. Any additional argument that I do not specifically address is rejected because it is inadequately briefed and lacks discernable merit. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶2 At a trial, the court and the jury heard evidence on three alleged violations: operating while intoxicated-1st offense; lane deviation; and, pertinent to this appeal, improper refusal. However, consistent with the terms of implied consent laws, the court made clear to the parties, that the court alone would decide whether there was an improper refusal. See WIS. STAT. § 343.305(9). Bise did not make the objection that the refusal was for the jury to decide.
¶3 A police officer testified in pertinent part at trial as follows. The officer was working at approximately 2:50 a.m., on a Sunday, when his attention was drawn to a vehicle traveling in the same direction as the officer, on a road that had, at that point, three lanes running in the same direction. The vehicle was operated by Bise, who had no passengers. From a distance of no more than four car lengths away, the officer observed Bise "pass[ ] over the center line on either side a total of five times, three to the left line and two to the right line," including into a bicycle lane. These appeared to the officer to be unsafe lane deviations. The officer activated his emergency lights to pull Bise over. Bise eventually stopped, but before stopping Bise drove "down the bike lane, which is unsafe for those on the road and someone who may be using the bike lane." It was raining. The officer took the rain into account in assessing Bise's apparent impairment.
¶4 After Bise stopped, the officer approached the driver's side and the officer, in his own words,
had to knock several times on the window before [Bise] noticed that I was present at his vehicle. He rolled down the window approximately two or three inches but remained staring forward. I identified myself and the reason for the traffic stop. At this time I could smell the odor of intoxicants coming from inside of the vehicle.
After the officer asked Bise for his driver's license, Bise indicated at first that he could not recall where his wallet was in his vehicle and then, once he found the wallet, had trouble locating his license. Bise continued to avoid looking at the officer throughout their interactions, "staring forward." After the officer was able to look at Bise's eyes, they appeared "red and bloodshot."
¶5 The officer had Bise step out of the vehicle for field sobriety tests. During the horizontal gaze nystagmus test, the officer noted six clues of intoxication, including lack of smooth pursuit and irregular eye dilation. During the walk-and-turn test, the officer noted two clues; Bise started too soon and missed two steps. During the one-legged stand, the officer noted one clue; Bise used his arms to balance.
¶6 Bise told the officer that he was coming from a bar downtown, had consumed two drinks that night, and was on his way home. Bise's speech was "slow and slurred, and there was a good amount of thought placed in everything that was said." The officer came to realize, during discussion before the field sobriety tests, that Bise has a speech impediment.
¶7 The officer placed Bise under arrest on suspicion of operating while intoxicated and transported him to jail. The officer read to him from the Informing the Accused form. This informed Bise that there are three types of tests: blood, breath, and urine. Bise told the officer that he wanted to give a blood sample but not a breath sample. The officer informed Bise that his department can choose, and has chosen, a primary test, namely, a breath sample. But, the officer further explained, if after giving a breath sample Bise wanted to submit to a blood draw as a secondary test he could do so. The officer specifically told Bise that if he did not submit to a breath test the officer would consider that to be a refusal. Bise said he did not understand. The officer "read the Informing the Accused [form] verbatim again to him and then also informed him that if he refused to do the breath test, it would be counted against him," as a refusal. Based on Bise's continued refusal to submit to a breath test, the officer marked the form as a refusal.
¶8 After the officer gave testimony summarized above (and a second officer testified on an unrelated topic), Bise's attorney made motions for directed verdicts on all three alleged violations. Regarding the refusal, the court asked Bise's attorney if Bise wanted to testify before the court made a finding on the refusal or if instead "the defense is asking me to make that call right now." Defense counsel responded:
We are going to call Mr. Bise [during the course of trial]. However, based on [findings made by the court], ... we don't have any motivation to go into the refusal issue [during testimony by Bise], so we're asking for a directed verdict on that.
¶9 On this basis, without hearing testimony from Bise, the court found that Bise improperly refused. Bise's attorney effectively asked the court to reconsider its ruling. Counsel argued that, based on the officer's own testimony, the officer did not make clear to Bise that if he refused to provide a breath sample this would count as a refusal for the purposes of the implied consent law. However, after the court had the court reporter read back the officer's pertinent testimony, summarized above, Bise's counsel withdrew the argument.
¶10 Our supreme court has explained the legal standards as follows:
The issues at a statutory refusal hearing are limited to, inter alia, whether the officer had probable cause to believe that the person was driving or operating a motor vehicle while under the influence and whether the officer complied with Wis. Stat. § 343.305(4) governing the information the officer shall read to the person from whom the test specimen is requested.
....
In the context of a refusal hearing following an arrest for operating a motor vehicle while intoxicated, "probable cause" refers generally to that quantum of evidence that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. The burden was on the state in the instant case to present evidence sufficient to establish the officer's probable cause to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.
Whether probable cause to arrest exists in a given case is a question of law that this court determines independently of the circuit court ... but benefiting from [its analysis].
Washburn Cty. v. Smith , 2008 WI 23, ¶¶2, 15-16, 308 Wis. 2d 65, 746 N.W.2d 243 (footnotes omitted).
¶11 "No refusal." In the only argument along these lines that I can discern, Bise contends that, because he offered to submit to a blood test, "there was no refusal," because the blood test is one of the three options listed on the Informing the Accused form. I reject this argument because his attorney did not make it in the circuit court. See State v. Reese , 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396 (this court typically will not address arguments raised for the first time on appeal). As summarized above, his attorney pursued a related concept in asking the court to reconsider its refusal decision, but explicitly abandoned the argument in the face of the uncontested trial testimony.
¶12 I separately observe that if I were to address the merits of the argument I would reject it. Bise provides no authority for the proposition that a police agency cannot designate one test as the primary test subject to refusal sanctions, allowing alternative tests only when a subject does not refuse the primary test.
¶13 No "opportunity to present a defense." Bise asserts that the court denied him the right to testify in his defense by ruling on the refusal before he testified. Again, I reject this argument based on Bise's failure to preserve it in the circuit court.
¶14 I separately observe that Bise's assertion has no merit, because as summarized above when defense counsel explicitly asked for a refusal ruling the court went out of its way to specifically inquire whether the defense wanted to have Bise testify first. Counsel clearly responded no, explaining that he saw nothing to be gained on the refusal by having Bise testify.
¶15 Lack of probable cause. Highlighting inferences from the evidence that he likes and ignoring inferences that he does not, Bise argues that there was no probable cause to justify the request for a breath sample. I conclude that the State presented evidence that was easily sufficient to "lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant." See Smith , 308 Wis. 2d 65, ¶15. As summarized above, the State presented a wide variety of evidence on this topic. To recap, at a time when drunk drivers tend to be on the roadways, the officer: observed driving that suggested impairment, including bad driving during the course of the stop; had to knock on the window to get Bise's attention; smelled the odor of intoxicants coming from inside the vehicle; observed Bise having trouble producing his license; noted that Bise tried to avoid eye contact; eventually saw that Bise's eyes were "red and bloodshot"; and took Bise through field sobriety tests that resulted in at least partial failures. In addition, Bise admitted to having consumed multiple drinks (the proverbial two) and spoke in a slow and slurred manner.
¶16 The officer acknowledged that he came to detect a speech impediment and that the field sobriety tests occurred at the roadside in the rain, both facts that Bise emphasizes on appeal. However, in determining that the State carried its burden of proof on all elements of a refusal, the court implicitly credited the officer's testimony that these facts were not likely to have misled him regarding signs of intoxication.
¶17 Bise argues that a "bad knee" limited his ability to perform well in the field sobriety tests. But the officer gave unrebutted testimony that, after Bise told the officer that "his leg was bad," Bise told the officer that the one-legged stand "would not be a problem."
By the Court .-Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.