COURT OF APPEALS
DECISION
DATED AND FILED

February 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1734**

Cir. Ct. Nos. **2019TR4944**
**2019TR4946**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

CRAIG R. THATCHER,

DEFENDANT-RESPONDENT.

APPEAL from orders of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed.*

¶1 GILL, J.[1] Craig Thatcher was cited for operating a motor vehicle with a prohibited alcohol concentration (PAC), as a first offense. The circuit court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

granted Thatcher's motion to suppress the results of a chemical test of his breath. The court later denied the State's motion to reconsider that decision. The court subsequently granted Thatcher's motion to suppress the results of a secondary chemical test of his blood, and it then granted Thatcher's motion to dismiss the PAC citation.

¶2 The State now appeals, arguing that the circuit court erred by granting Thatcher's suppression motions and by denying the State's motion for reconsideration. We conclude that the court properly granted Thatcher's motion to suppress the results of his breath test based on the State's failure to timely file a brief disputing Thatcher's arguments. We further conclude that the court did not erroneously exercise its discretion by denying the State's motion to reconsider that decision. Finally, we conclude that the court properly granted Thatcher's motion to suppress the results of the secondary blood test. We therefore affirm.

## BACKGROUND

¶3 On November 2, 2019, a motorist called law enforcement and reported that a black Cadillac SUV with a specific license plate number was "all over the road deviating lanes."[2] Wisconsin State Patrol Trooper Damien Wood responded to the dispatch notice. After locating the SUV and observing the same driving behavior reported by the citizen witness, Wood initiated a traffic stop. Wood identified Thatcher as the driver of the SUV, and following further

---

[2] These background facts are taken from the testimony and other evidence introduced at the July 13, 2020 hearing on Thatcher's first suppression motion. These facts are not disputed for purposes of this appeal. Both Thatcher and the state patrol trooper who stopped Thatcher's vehicle testified at the July 13 hearing. A video of the traffic stop was also introduced into evidence at that hearing.

investigation, he placed Thatcher under arrest for operating a motor vehicle while intoxicated (OWI).

¶4      The video of the traffic stop shows that after Wood placed Thatcher under arrest, he told Thatcher:

> Okay, just gotta do some paperwork here. So this is first offense. It's not a crime. Traffic forfeiture, like a bad speeding ticket that nobody wants. So, what's gonna happen is I gotta issue a couple citations here. I have to read you a form and depending on how all that goes, [unintelligible] you should be able to just go to the jail, book you through, and you'll be able to get out tonight with a sober driver. So, sound like a plan?

¶5      Several minutes later, Wood read Thatcher the Informing the Accused Form ("ITA Form") promulgated by the Wisconsin Department of Transportation. The ITA Form contains information that a law enforcement officer is statutorily required to read to a person when requesting a sample of the person's breath, blood, or urine for evidentiary chemical testing. *See* WIS. STAT. § 343.305(3), (4). After reading the ITA Form, Wood asked whether Thatcher would submit to an evidentiary chemical test of his breath. The following exchange then occurred:

> Thatcher: I have a commercial driver's license.
>
> Wood: Okay.
>
> Thatcher: So, what do you—what do you mean by that?
>
> Wood: Did you—did you understand what the form said?
>
> Thatcher: Yes.
>
> Wood: Okay, 'cuz I can't interpret what this says. I'm—I can read what this says exactly. I can't summarize what it means because it can change certain meanings and I don't want you to be confused by certain things. So if you'd like I can read you the whole thing again.

Thatcher: No, I don't.

Wood: Okay.

Thatcher: But, [unintelligible] the commercial driver's license which is what I have. That's my job.

Wood: Do you want me to read that part again?

Thatcher: Please.

Wood then reread paragraph 4 of the ITA Form, pertaining to commercial driver's licenses, as well as paragraph 5 of the form, which relates to the suspension of a driver's operating privileges if a detectable amount of a restricted controlled substance is found in the driver's blood.

¶6 Thatcher subsequently told Wood that he understood the ITA Form, and he agreed to submit to an evidentiary chemical test of his breath. Law enforcement later collected an evidentiary sample of Thatcher's breath. Thatcher requested a secondary chemical test of his blood, pursuant to WIS. STAT. § 343.305(5)(a), and law enforcement complied with that request.

¶7 Thatcher was ultimately cited for operating a motor vehicle with a PAC, as a first offense. He filed a motion and brief seeking to suppress "all direct and derivative evidence" obtained as a result of Wood's "improper influence on [Thatcher's] decision regarding chemical testing in this case." Thatcher argued that he did not validly consent to an evidentiary chemical test of his breath because: (1) Wood exceeded his duty under WIS. STAT. § 343.305(4) by providing additional information, beyond that included on the ITA Form; (2) the additional information was misleading; and (3) the misinformation affected Thatcher's choice to consent to an evidentiary chemical breath test. *See County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995), *abrogated on other grounds by Washburn County v. Smith*, 2008 WI 23, ¶64, 308

Wis. 2d 65, 746 N.W.2d 243. Thatcher also argued that his consent to the blood test was involuntary because Wood "engaged in an unlawful attempt to incentivize consent."[3]

¶8 The circuit court held an evidentiary hearing on Thatcher's suppression motion on July 13, 2020. Following the close of evidence, the court set a deadline of August 7, 2020, for the State to file a brief in response to Thatcher's motion. The court also set a deadline of August 17, 2020, for Thatcher to file a reply brief. On August 7, the State submitted its response brief, which stated in its entirety:

### INTRODUCTION

The above-entitled matter came before the Honorable Scott R. Needham on July 13, 2020 in the County of St. Croix, Wisconsin[,] Circuit Court, for a motion hearing pursuant to Defendant's Motion to Suppress. Michelle Brekken, Assistant District Attorney[,] appeared on behalf of the State of Wisconsin. The Defendant was present and represented by Adam Nero. Testimony was received from Trooper Damien Wood with Wisconsin the State Highway Patrol [sic] and the Defendant. The State now offers the following brief in response.

### FACTS

### ARGUMENT

### CONCLUSION

For the forgoing reasons, the Court should **DENY** Defendant's Motion in its entirety.

---

[3] Thatcher also filed another suppression motion arguing that his consent to the blood test was involuntary because certain language on the ITA Form is "coercive." The circuit court denied that motion at the end of the suppression hearing, concluding that Thatcher's argument was contrary to established Wisconsin Court of Appeals precedent. On appeal, Thatcher has not sought to challenge the court's denial of this alternative suppression motion.

¶9      Thatcher submitted a reply brief on August 17, 2020.  On September 22, 2020, the circuit court issued a written decision and order granting Thatcher's suppression motion.  After summarizing Thatcher's arguments and the applicable law, the court noted that by failing to file a brief disputing Thatcher's arguments, the State had "apparently conceded … the issues as raised by Thatcher."  The court explained:

> Whether an oversight or not, [the State's] blank slate and lack of analysis provided the Court with no assistance in addressing the issues raised by Thatcher in his motion.  The Court can only conclude that the State chose to abandon its prior challenge to the motion.  Accordingly, after considering the file, proceedings and record herein, the Court thus finds it appropriate to suppress the results of the primary alcohol test due to Trooper Wood's improper influence on Thatcher.  The Court declines the opportunity to develop the State's argument.

¶10     The following day, the State filed a corrected brief in response to Thatcher's suppression motion.  In its brief, the State argued that Wood did not provide an oversupply of information under the first prong of the *Quelle* test.  Regardless, even if Wood did provide an oversupply of information, the State argued that the additional information was not misleading and that Thatcher had failed to show that the information affected his choice to consent to an evidentiary chemical test of his breath.  The State therefore asked the court to deny Thatcher's suppression motion.

¶11     In a letter accompanying its corrected brief, the State explained that after the circuit court issued its decision granting Thatcher's suppression motion, it "bec[a]me apparent" that "a prior draft of the State's Brief was inadvertently submitted without argument."  In light of this "technical error," the State asked the court to "reconsider" its prior decision.  The State noted that the "correct version

of the [State's] brief was immediately filed for the Court's review, as it was timely completed and unfortunately not properly uploaded to CCAP."[4]

¶12 Thatcher's attorney then wrote to the circuit court, asking the court to "stand by" its previous ruling. Counsel noted that "for every electronic filing a party submits, it receives an automated message from CCAP, with a link to the document, which a party can click to confirm that their submission was in proper form." Counsel also observed that the court, "in its decision and order, decided to grant the Defense's motion due to the State's blank submission, 'whether [it was] an oversight or not.'" Counsel therefore argued that the State's assertion that its blank brief was an oversight did not provide any basis for the court to reconsider its prior decision.

¶13 On October 1, 2020, the circuit court issued a written decision and order denying the State's request for reconsideration. The court ruled that the State had not "submitted newly discovered evidence or established a manifest error of law or fact" that would warrant reconsideration of the court's prior decision. *See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853. The court explained:

> While the Court appreciates the submission of the corrected brief and the fact that a technical error was apparently the culprit for the prior blank slate, it is noteworthy to point out that the State's brief was filed August 7, 2020 while the technical error was not discovered until September 23, 2020; the day after the Court pointed out the oversight in its Decision and Order and five weeks after the Defense submitted it[s] brief. Though perhaps the State provided an

---

[4] "CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs." *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

explanation for its mistake, it is nevertheless not an excuse. As aptly noted in **Sherman v. Heiser**, 85 Wis. 2d 246, 254, 270 N.W.2d 397, 401 (1978), "courts cannot allow litigants to control judicial calendars." Furthermore, the Court has both statutory and inherent authority "to sanction parties for failure to prosecute, failure to comply with procedural statutes or rules, and for failure to obey court orders." **Johnson v. Allis Chalmers Corp.**, 162 Wis. 2d 261, 273-74, 470 N.W.2d 859 (1991).

¶14    The circuit court further stated that "a consideration of the merits of the State's argument does not change the outcome." The court set forth the three factors that a court must consider under **Quelle** and then stated, without further analysis or explanation, "The answer to all three questions is 'yes.'" Consequently, the court concluded that it was "still … appropriate to suppress the results of the [breath] test due to Trooper Wood's improper influence on Thatcher."

¶15    Thereafter, Thatcher asked the circuit court to "clarify" the scope of its suppression order. Specifically, Thatcher asserted that in addition to the results of his evidentiary chemical breath test, the results of his evidentiary chemical blood test should also be suppressed under the "fruit of the poisonous tree" doctrine. In other words, Thatcher argued that the blood test results should be suppressed because the "secondary blood test … owed its discovery to the illegal activity giving rise to the first test." Thatcher therefore asked the court to enter an order suppressing the blood test results. The court granted Thatcher's motion, over the State's objection, and entered an order suppressing the blood test results. At Thatcher's request, the court subsequently entered an order dismissing the PAC citation.

¶16    The State now appeals, arguing that the circuit court erred by: (1) granting Thatcher's motion to suppress the breath test results; (2) denying

the State's motion for reconsideration of that decision; and (3) granting Thatcher's subsequent motion to suppress the blood test results.

## DISCUSSION

¶17    As explained above, the circuit court initially suppressed the results of Thatcher's breath test on the grounds that the State had failed to file a brief responding to Thatcher's arguments.  We conclude that the court did not err in that regard.

¶18    It is an oft-stated principle that arguments not refuted by a party may be deemed conceded.  *See, e.g.*, *Steiner v. Steiner*, 2004 WI App 169, ¶17, 276 Wis. 2d 290, 687 N.W.2d 740.  Here, Thatcher filed a brief that contained developed arguments explaining why he believed the circuit court should suppress the results of his breath test.  In particular, Thatcher argued that his consent to the breath test was invalid because: (1) Wood exceeded his duty under WIS. STAT. § 343.305(4) by providing additional information not contained on the ITA Form; (2) the additional information was misleading; and (3) the misleading information affected Thatcher's choice to consent to the breath test.  The court held a hearing on Thatcher's suppression motion, and it then gave the State over three weeks to file a brief in response to the motion.  Although the State filed a brief within that deadline, its brief did not include any arguments refuting Thatcher's claims.

¶19    Under these circumstances, the circuit court appropriately refused to develop any arguments on the State's behalf and instead concluded "that the State chose to abandon its prior challenge to the motion."  This court frequently states that it will not abandon its neutrality to develop arguments for a party, *see, e.g.*, *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82, and we see no reason why a circuit court, unlike

9

this court, should be obligated to do so. Moreover, "Wisconsin circuit courts have inherent power, within the limits of their discretion, to control their dockets." *Parker v. Wisconsin Patients Comp. Fund*, 2009 WI App 42, ¶9, 317 Wis. 2d 460, 767 N.W.2d 272. In this case, we cannot conclude that the court erroneously exercised its discretion by granting Thatcher's suppression motion as a result of the State's failure to timely file a brief disputing Thatcher's arguments. Accordingly, we reject the State's argument that the court erred by granting Thatcher's initial motion to suppress the results of his breath test.

¶20 After the circuit court issued its written order granting Thatcher's motion to suppress the results of his breath test, the State filed a corrected brief and asked the court to reconsider its prior decision. The court denied the State's motion for reconsideration. Again, we cannot conclude that the court erroneously exercised its discretion in that regard. *See Koepsell's*, 275 Wis. 2d 397, ¶6 (stating that we review a circuit court's decision on a motion for reconsideration under the erroneous exercise of discretion standard).

¶21 "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Id.*, ¶44. In its order denying the State's reconsideration motion, the circuit court concluded that the State had not presented any newly discovered evidence in its motion for reconsideration. We agree with the court's assessment that the motion did not set forth any newly discovered evidence.

¶22 The circuit court also concluded the State had not shown that the court's previous decision rested on a manifest error of law or fact. The court accepted the State's assertion that its submission of a blank brief was a "technical error." Nevertheless, the court emphasized that the State did not discover its error

10

until the day after the court had issued its decision, which was more than five weeks after Thatcher had submitted his reply brief. Under these circumstances, the court concluded that although the State had provided an "explanation" for its filing of a blank brief, that explanation was not an "excuse" for the State's error. The court then noted that a court cannot allow litigants to control the court's calendar, and it further observed that a court has authority to sanction parties for failure to prosecute and failure to comply with court orders. The court cited legal authority in support of these propositions.

¶23    The circuit court's decision shows that it examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion. *See LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. The court reasonably concluded that the State had not presented newly discovered evidence to support its motion for reconsideration, nor had the State shown that the court's prior decision was based on a manifest error of law or fact. On this record, we cannot conclude that the court erroneously exercised its discretion by denying the State's motion for reconsideration.[5]

¶24    Finally, we conclude that the circuit court did not err by granting Thatcher's motion to suppress his blood test results under the "fruit of the poisonous tree" doctrine. "[I]n its broadest sense, the [fruit of the poisonous tree doctrine] can be regarded ... as a device to prohibit the use of any secondary

---

[5] Because we conclude the circuit court did not erroneously exercise its discretion by denying the State's motion for reconsideration, for the reasons stated above, we need not address the court's alternative basis for denying the reconsideration motion—i.e., that Thatcher had established each of the three prongs of the *Quelle* test. *See County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995), *abrogated on other grounds by Washburn County v. Smith*, 2008 WI 23, ¶64, 308 Wis. 2d 65, 746 N.W.2d 243.

evidence which is the product of or which owes its discovery to illegal government activity." **State v. Knapp**, 2005 WI 127, ¶24, 285 Wis. 2d 86, 700 N.W.2d 899 (citation omitted).

¶25 In this case, the blood test results clearly owed their discovery to the inadmissible breath test results. Upon arresting an individual for OWI, a law enforcement officer "may request the person to provide one or more samples of his or her breath, blood or urine" for evidentiary chemical testing. WIS. STAT. § 343.305(3)(a). If the individual submits to this primary test, the individual may then request an alternative, secondary test. Sec. 343.305(5)(a). This court has previously described the results of the secondary test as "material evidence relating to the prior test." **State v. Renard**, 123 Wis. 2d 458, 461, 367 N.W.2d 237 (Ct. App. 1985).

¶26 As Thatcher correctly notes, primary and secondary tests under WIS. STAT. § 343.305 "are inextricably intertwined and interrelated," as a secondary test does not occur absent a primary test. The circuit court similarly observed that the secondary blood test in this case "was only available as an alternative after Thatcher submitted to the primary test," and "[b]ut for the breath test … there would [not have] been a second test." The results of Thatcher's blood test therefore owe their discovery to the fact that Thatcher had previously submitted to a breath test. *See* **Knapp**, 285 Wis. 2d 86, ¶24. The court properly suppressed the breath test results based on Thatcher's argument—which the State failed to timely refute—that Wood improperly influenced Thatcher's decision to consent to the breath test. Given that conclusion, the court properly suppressed the results of the secondary blood test as fruit of the poisonous tree.

12

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.